1   STEVEN L. HAMMOND (SBN 220521)
    Hammond Law Group, P.C.
2   One Embarcadero Center, Suite 2360
    San Francisco, California  94111
3   Telephone:  (415) 955-1915

4   DAVID HARRIS (SBN 215224)
    North Bay Law Group
5   116 E Blithedale Avenue, Suite 2
    Mill Valley, CA 94941
6   Telephone:  (415) 388-8788

7   Attorneys for Plaintiff
    DONALD LOUNIBOS
8

9                     UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11
    DONALD LOUNIBOS, individually and          Case No. 12-CV-0636 (JST)
12  on behalf of all others similarly situated,
                                                **NOTICE OF MOTION AND MOTION FOR**
13                  Plaintiff,                  **PRELIMINARY APPROVAL OF CLASS-**
                                                **ACTION SETTLEMENT, CONDITIONAL**
14       v.                                     **CERTIFICATION OF SETTLEMENT**
                                                **CLASS AND APPROVAL OF NOTICE**
15  KEYPOINT GOVERNMENT                         **PROGRAM;**
    SOLUTIONS, INC., a Delaware
16  Corporation,  and Does 1-10, inclusive,     **MEMORANDUM OF POINTS AND**
                                                **AUTHORITIES IN SUPPORT THEREOF.**
17                  Defendants.

18                                              Assigned to Honorable Jon S. Tigar
                                                450 Golden Gate Avenue
19                                              San Francisco, CA 94102
20
                                                Date:    May 2, 2013
21                                              Time:    2:00  PM
                                                Court:   Courtroom 9, 19th Floor
22

23

24

25

26

27

28

TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD:  NOTICE IS

HEREBY GIVEN that, on May 2, 2013, at 2:00 p.m., or as soon thereafter as counsel may be heard, in

Courtroom 9, located at 450 Golden Gate Avenue, 19th floor, San Francisco, California 94102, Plaintiff

Donald Lounibos ("Plaintiff" or "Lounibos") will move for an order granting (1) preliminary approval of

the Settlement between Plaintiff and Defendant KeyPoint Government Solutions ("Defendant" or

"KeyPoint"); (2) conditional certification of a Settlement Class pursuant to Rule 23 of the Federal Rules

of Civil Procedure;[1] (3) approval of the form and method of Class Notice; and (4) appointment of a

Claims Administrator.  The parties have met and conferred prior to the filing of this Motion.  The

defense has indicated it will not oppose the filing or substance of this Motion.

The Motion will be made and based upon this Notice of Motion and Memorandum of Points and

Authorities, the Declaration of David S. Harris in Support of Motion for Preliminary Approval of Class-

Action Settlement, the Declaration of Donald Lounibos in Support of Motion for Preliminary Approval

of Class-Action Settlement, and all of the pleadings, papers, and documents contained in the file of the

within action.


DATED:  March 28, 2013                                NORTH BAY LAW GROUP

                                                     _____/s/_____

                                                     David S  Harris
                                                     *Attorney for Plaintiff*

/// 

/// 

/// 

/// 

/// 

/// 

/// 

---

[1] The "Settlement Class" is defined as "all individuals who were employed in a Covered Position during the Covered Time Frame." (See Stipulated Class Settlement Agreement and Release of All Claims (hereinafter "Settlement") ¶ 1.11.)  (The Settlement is attached as Exhibit 1 to the Declaration of David S. Harris in Support of Motion for Preliminary Approval of Class-Action Settlement, Conditional Certification of Settlement Class, and Approval of Notice Program ("Harris Decl.") filed herewith.)

1

## **TABLE OF CONTENTS**

2    **I.       INTRODUCTION**………………………………………..……..…3

3    **II.      PROCEDURAL BACKGROUND**………………………..……….3

4    **III.     SUMMARY OF PLAINTIFF'S CLAIMS FOR RELIEF**…………………….4

5              **a.  Unpaid Wages and Overtime**…………………………………4

6              **b.  Meal-And-Rest-Break Violations**……………………………5

7              **c.  Continuing Wages**………………………………………5

8              **d.  Wage-Statement Violations**…………………………………5

9              **e.  Failure to Maintain Accurate Payroll Time Records**………………5

10   **IV.     CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS**……………5

11   **V.      SUMMARY OF THE PROPOSED SETTLEMENT**……………………………7

12             **a.  The Settlement and the Payment of Claims**……………………...7

13             **b.  Tax Implications**………………………………………..……..8

14             **c.  Plaintiff's Service Payment**…………………………………8

15             **d.  Release of Claims**…..…………………………………11

16             **e.  Exclusions (Opt-Outs) & Objections**…………………………13

17             **f.  PAGA Payment to the LWDA**…………………………………13

18   **VI.     CLASS-NOTICE PROCEDURE**………………………………………14

19   **VII.    ATTORNEYS' FEES AND COSTS**………………………………..……15

20   **VIII.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**………..……15

21             **a.  The Terms Of The Proposed Settlement Are Fair**………………………16

22             **b.  Likely Duration of Further Litigation**……………………...……19

23             **c.  The Amount Offered in the Settlement**…………………………...19

24             **d.  The Extent of Discovery Completed And Stage of the Proceedings**……………19

25             **e.  Experience and Views of Counsel**……………………………20

26             **f.  Reaction of Class Members to the Proposed Settlement**…………………20

27   **IX.     APPOINTMENT OF CLAIMS ADMINISTRATOR**………………………20

28   **X.      CONCLUSION**………………………………………20

1

## TABLE OF AUTHORITIES

2

**CASES**

Allapattah Servs., Inc. v. Exxon Corp.,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................ 10

Barnhill v. Robert Saunders & Co.,
  125 Cal. App. 3d 1 (1981) .................................................................................... 17

Bogosian v. Gulf Oil Corp.,
  621 F. Supp. 27 (E.D. Pa. 1985) .......................................................................... 11

Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.,
  2007 WL 1468847 (E.D. Pa. May 14, 2007) ....................................................... 11

Continental Ill. Sec. Litig.,
  962 F.2d 566 (7th Cir. 1992) ............................................................................... 10

Cook v. Niedert,
  142 F.3d 1004 (7th Cir. 1997) ....................................................................... 10, 11

Coop v. DIRECTV, Inc.,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 19

Dunleavy v. Nadler,,
  213 F.3d 454 (9th Cir. 2000) ................................................................................. 6

Earley v. Sup. Ct. (Washington Mut. Bank,F.A.)
  79 Cal. App. 4th 1420 (2000) .............................................................................. 17

Elliott v. ITT Corp.,
  150 F.R.D. 569 (N.D. Ill. 1992) ............................................................................ 6

Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,
  137 F.R.D. 240 (S.D. Ohio 1991) ........................................................................ 10

Glass v. UBS Fin. Servs., Inc.,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................................................ 10

Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................... 15, 18

In re Mego Fin. Corp. Sec. Litig.,
  213 F.3d 454 (9th Cir. 2000) ............................................................................... 10

In re Pacific Enters. Sec. Litig.,,
  47 F.3d 373 (9th Cir. 1995) ................................................................................. 20

In re S. Ohio Correctional Facility.,
  175 F.R.D. 270 (S.D. Ohio 1997) .......................................................................... 9

Labbate-D'Alauro v. GC Servs. Ltd.,
  P'ship, 168 F.R.D. 451 (E.D.N.Y. 1996) ............................................................... 6

Lightbourn v. County of El Paso,
  118 F.3d 421 (5th Cir. 1997) ................................................................................. 6

Linney v. Cellular Alaska P'ship,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................. 18

Linney v. Cellular Alaska P'ship,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................. 18

Medearis v. Oregon Teamster Employers Trust,

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2009 U.S. Dist. LEXIS 53453 (D. Or. filed June 19, 2009). ................................................ 18

Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 19

Officers for Justice v. Civil Serv. Comm.,
    688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) ...................................... 6

Re Continental/Midlantic S'holders Litig.,
    1987 WL 16678 (E.D. Pa. Aug. 29, 1987) ........................................................................ 10

Rodriguez v. West Publ'g Corp.,
    563 F.3d 948 (9th Cir. 2009) ..................................................................................... 9, 18

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
    2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. 2002) ................................................................ 9

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2001) ............................................................................................ 9

Torrisi v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................................ 15

Van Bronkhorst v. Safeco Corp.,
    529 F.2d 943 (9th Cir. 1976) .......................................................................................... 19

Van Vraken v. Atl. Richfield Co.,
    901 F. Supp. 294 (S.D. Cal. 1995) .................................................................................. 10

Wilcox v. Birtwhistle,
    21 Cal. 4th 973 (1999) ................................................................................................... 17

Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.,
    76 F.R.D. 173 (S.D.N.Y 1977) ...................................................................................... 10

7-Eleven Owners for Fair Franchising,
    85 Cal. App. 4th 1135 (2000) ......................................................................................... 17

**STATUTES**

Cal. Bus. and Prof. Code § 17200 ........................................................................................... 3

Cal. Lab. Code § 201 .......................................................................................................... 3, 5

Cal. Lab. Code § 202 .......................................................................................................... 3, 5

Cal. Lab. Code § 203 ................................................................................................... 3, 16, 17

Cal. Lab. Code § 226. ......................................................................................................... 3, 5

Cal. Lab. Code § 226.7 ................................................................................................... 3, 5, 16

Cal. Lab. Code § 510. ............................................................................................................ 3

Cal. Lab. Code § 512. ......................................................................................................... 3, 5

Cal. Lab. Code § 1174. ..................................................................................................... 3, 16

Cal. Lab. Code § 1194. .......................................................................................................... 3

Cal. Lab. Code § 1194.2. ....................................................................................................... 3

Cal. Lab. Code § 1198. .......................................................................................................... 3

Cal. Lab. Code § 1198. .......................................................................................................... 3

Cal. Lab. Code § 2698. ........................................................................................................ 14

Cal. Lab. Code § 2699. ................................................................................................ 14

29 U.S.C. § 216 ........................................................................................................... 3

**RULES**

Fed. R. Civ. P. 23 ............................................................................................... 3, 6, 7, 15

1

## I.   INTRODUCTION.

This Court should grant preliminary approval of the Stipulated Class Settlement Agreement and Release Of All Claims ("Settlement") entered between Plaintiff Donald Lounibos ("Plaintiff" or "Lounibos"), on behalf of the absent Class Members whom he seeks to represent, on the one hand, and Defendant KeyPoint Government Solutions ("Defendant" or "KeyPoint"), on the other hand. (Harris Decl., Ex. 1).  This Motion requests that the Court grant preliminary approval of the $300,000 Settlement, finding that there is a *prima facie* showing that it is fair, adequate, and reasonable.  The Motion requests that the Court (1) conditionally certify the Settlement Class, (2) approve the form and method of Notice (3) appoint David S. Harris of North Bay Law Group and Steven Hammond of Hammond Law Group, P.C., as Class Counsel (4) approve Plaintiff as the Class Representative (5) appoint Gilardi & Co., LLC ("Gilardi"), as Claims Administrator, and (6) approve the proposed mechanism for receiving and dealing with claims and notices of election to opt out of the settlement. Given the uncertainty and risks faced by the parties to this litigation, Plaintiff has determined that a $300,000 settlement is the most desirable way to resolve this matter.  (Harris Decl. ¶¶5, 6, 9 & 13).

## II.   PROCEDURAL BACKGROUND.

This action was commenced as a putative class action on February 9, 2012.  (Harris Decl. ¶4.)  In the Complaint, Plaintiff alleged that Defendant had violated the California Labor Code, including sections 201, 202, 203, 226, 226.7, 510, 512, 1174, 1194, 1194.2 and 1198, Industrial Welfare Commission Wage Order 4 and 29 U.S.C. § 216.  (Id.)  As alleged in the Complaint, KeyPoint employed Plaintiff as an investigator on an hourly basis from September 2009 through October 2011.  (Harris Decl., Ex. 1, ¶5.)  In the Complaint, Plaintiff contends KeyPoint failed to pay minimum wage and overtime compensation, failed to provide proper rest and meal breaks, failed to provide adequate pay statements, failed to maintain accurate payroll records and failed to provide Plaintiff with copies of signed documents in his personnel file.  (Harris Decl., Ex. 1.)  The operative Complaint also seeks miscellaneous penalties, including waiting time penalties pursuant to California Labor Code section 203, civil penalties pursuant to California Labor Code section 226, and additional relief under the California Business and Professions Code section 17200 *et seq*.).  (Id.)

KeyPoint contends that it has complied with all applicable laws, including, but not limited to, those relating to payment of wages, hours worked, recordkeeping obligations, meal and rest breaks, and the provision of accurate wage statements. (Harris Decl., ¶5.) KeyPoint disputes all material allegations and all claims for damages and other relief made by Plaintiff in the Complaint, or otherwise asserted during the course of the litigation of this action. (Id.)

Between the filing of this case, in February of 2012, and November 2012, the parties engaged in substantial investigation as well as formal and informal discovery in connection with this action. (Harris Decl., ¶7.) KeyPoint provided extensive documents and hundreds of pages of putative class data to Plaintiff and his counsel to review and analyze, which included a comprehensive class list of all California employees and the duration of their employment, complete hourly employee payroll data for 25% of the putative class, KeyPoint policies, handbooks, training materials and other documents relevant to the issues in the litigation. (Harris Decl. ¶7.) Collectively, the parties interviewed numerous witnesses, including current and former employees, with respect to the facts and issues of the case. (Harris Decl. ¶7.) Additionally, Plaintiff took the deposition of KeyPoint's Chief Personnel Officer and the KeyPoint Field Manager who was responsible for the implementation of KeyPoint's policies and practices for Plaintiff and more than one-half of the putative class. (Harris Decl. ¶7.)

On November 2, 2012, the parties participated in a full-day mediation with an experienced mediator, Hon. David A. Garcia (Ret.) of JAMS in San Francisco. (Harris Decl. ¶8.) With the assistance of the Judge Garcia, the parties ultimately reached an arms-length settlement, which Plaintiff now submits to this Court for preliminary approval. (Harris Decl. ¶8.) The settlement negotiations, as reflected in the accompanying Harris Declaration, were vigorous, truly arms' length, and involved a contentious—albeit collegial—debate. (Harris Decl. ¶8.)

III.    SUMMARY OF PLAINTIFF'S CLAIMS FOR RELIEF.

A.    UNPAID WAGES AND OVERTIME.

It is Plaintiff's contention that Plaintiff and Class Members were not paid for all time worked. (Harris Decl. ¶4, Ex.1.) In particular, Plaintiff contends that he and Class Members were required to engage in a significant amount of "off-the-clock" work for which they were not compensated either minimum wages and/or overtime compensation. (Harris Decl. ¶4, Ex.1.)

**B.** MEAL-AND-REST-BREAK VIOLATIONS.

Plaintiff contends that Defendant violated IWC Wage Order number 4, as well as sections 226.7 and 512 of the California Labor Code by failing to provide adequate rest breaks and meal periods to its investigators. (Harris Decl. ¶4, Ex.1.) Specifically, Plaintiff contends that he and class members were routinely deprived of a thirty-minute uninterrupted meal break that began within the first five hours of the day. (Harris Decl. ¶4, Ex.1.) Further, due to the high volume of work and wide geographic area that Plaintiff and Class Members were required to travel, Plaintiff contends that Class Members were not always provided with required ten-minute paid rest periods. (Harris Decl. ¶4, Ex.1.)

**C.** CONTINUING WAGES.

Plaintiff contends that Defendant violated sections 201 and 202 of the California Labor Code by failing to pay Plaintiff and the putative Class Members all wages due and owing upon the termination of their employment, including the provision to provide one additional hour of pay for each work day in which a meal or rest period was not provided. (Harris Decl. ¶4, Ex.1.)

**D.** WAGE-STATEMENT VIOLATIONS.

Plaintiff contends that Defendant violated section 226 of the Labor Code, failing to provide the information required by subsection (a) including the accurate total hours worked, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. *See* Cal. Lab. Code § 226; (Harris Decl. ¶4, Ex.1.).

**E.** FAILURE TO MAINTAIN ACCURATE PAYROLL TIME RECORDS.

Plaintiff contends that KeyPoint violated California Labor Code section 1174 and IWC Wage Order number 4, section 7(A)(3), by failing to keep required payroll records showing the actual hours and/or the beginning and end time worked each day by Plaintiff and Class Members. (Harris Decl. ¶4, Ex.1.)

**IV. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS.**

The parties seek conditional certification of the "Settlement Class" defined as "all individuals who were employed in a Covered Position during the Covered Time Frame (hereinafter "Class Member" or "Settlement Class"). (Harris Decl., Ex. 1, ¶1.11.) Covered Positions is defined as "all natural persons who were employed by Defendant in California as non-exempt workers in the position of Investigator or

1   similar position." (Harris Decl., Ex. 1, ¶1.7.)  The Covered Time Frame is defined as "the period of time

2   beginning June 1, 2009 through the date of preliminary approval of the Settlement."  (Harris Decl., Ex.

3   1, ¶1.6.)

4           There is authority to the effect that a pre-certification settlement is subject to a somewhat higher

5   level of scrutiny than one negotiated post-certification.  See, e.g., Dunleavy v. Nadler, 213 F.3d 454, 458

6   (9th Cir. 2000).  Concerns about the rights of absent class members are dispelled by a careful fairness

7   review of the settlement by the trial court and by the procedural protections provided by Rule 23.

8   Officers for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459 U.S.

9   1217 (1983).  Class actions are favored, and Rule 23 is to be given a broad, rather than a restrictive,

10  interpretation in order to favor maintaining class actions.  Labbate-D'Alauro v. GC Servs. Ltd. P'ship,

11  168 F.R.D. 451, 454 (E.D.N.Y. 1996).  Rule 23 contains four requirements that must be satisfied:  (1)

12  The class must be so numerous "that joinder of all members is impracticable," (2) there must be

13  "questions of law or fact common to the class," (3) the claims of the representative plaintiffs must be

14  "typical of the claims of the class," and (4) the class representatives must show that they "will fairly and

15  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

16          Here, the numerosity requirement is met.  The approximate number of employees within the

17  Settlement Class is 144.  (Harris Decl., ¶13.)  Likewise, the commonality requirement is met.  In this

18  regard, if there is *one* issue whose resolution will affect all or a significant number of Class Members,

19  then commonality exists.  Lightbourn v. County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997).  Here,

20  common questions of fact and law predominate over issues that affect only individual Class Members

21  (for example, the individual amounts owing to each Class Member on account of missed breaks or the

22  failure to maintain adequate payroll records).  Moreover, even if it should turn out that the class

23  definition includes Class Members who have not been injured or who do not wish to pursue claims

24  against Defendant, that is not a bar to certification.  Elliott v. ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill.

25  1992).

26          Plaintiff also meets the typicality requirement.  His claims are very similar to those of any and all

27  absent Class Members.  Plaintiff alleges he was an investigator for Defendant in the State of California,

28  as with the other Class Members.  Plaintiff and Class Members allegedly were not provided adequate

minimum wage or overtime compensation, they allegedly were not properly provided their required rest and meal periods, they allegedly did not receive adequate wage statements, Defendant allegedly failed to maintain accurate payroll records for Plaintiff and Class Members and, to the extent their employment with Defendant terminated, Plaintiff and Class Member allegedly did not receive all wages due upon termination. (Harris Decl., ¶4, Ex. 1.)

Finally, Plaintiff is an adequate Class Representative: He has no conflicts of interest with Class Members, as he shares the Class Members' likely desire to be compensated in full pursuant to the California Labor Code and the Fair Labor Standards Act (hereinafter "FLSA"). (Harris Decl. ¶12.)

In addition to the just-described four requirements, the action also must meet one of the non-exclusive factors in Rule 23(b). Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As briefly discussed with respect to the commonality requirement, questions of law and fact predominate over questions affecting only individual Members. *The only individual determination is the measure of damages.*

The alternative to conditional class certification and settlement is protracted and uncertain litigation. (Harris Decl. ¶¶5, 6, 9 & 13). For all of the foregoing reasons, this Court should conditionally certify the Settlement Class, and set a date for a final hearing, at which time objectors, if any, may be heard and the fee issues resolved.

## V.    SUMMARY OF THE PROPOSED SETTLEMENT.

### A.    THE SETTLEMENT AND THE PAYMENT OF CLAIMS.

According to the Settlement, the Net Distribution Amount shall be computed by deducting all of the following from the $300,000.00 Total Settlement Amount: (1) up to twenty-five percent (25% or $75,000) in attorneys' fees to Class Counsel, subject to the approval by the Court, (2) reasonable costs and expenses of up to $15,000, subject to the approval by the Court, (3) up to $7,500 service payment to Plaintiff, subject to approval by the Court, (4) the reasonable costs of the Claims Administrator to administer the Settlement, currently estimated to be $13,177 (Harris Decl., ¶10, Ex. 4), (5) $5,000.00 to the State of California Labor and Workforce Development Agency ("LWDA") pursuant to the Private

Attorneys' General Act ("PAGA") and (6) Defendant's payroll taxes for the participating Class Members' distributions. (Harris Decl., Ex. 1, ¶4.2.) Once the Net Distribution Amount is calculated, each Class Member will be entitled to an Individual Settlement Amount, which is based on the number of pay periods that the Class Member worked in a Covered Position during the Covered Timeframe, calculated as follows: each Class Member will receive 1.00 "point" for each pay period he or she was employed during the Covered Timeframe. (Harris Decl., Ex. 1, ¶4.3.) Additionally, in order to address the payment of waiting time penalties to former employees, any Class Member who separated from his or her employment with KeyPoint during the Covered Timeframe will receive 5.00 additional points. (Harris Decl., Ex. 1, ¶4.3.) The value of a point shall be determined by dividing the Net Distribution Amount by the total number of points available to the Settlement Class. (Harris Decl., Ex. 1, ¶4.3.) Each Claimant shall receive a net payment equal to his or her points multiplied by the value of a point. (Harris Decl., Ex. 1, ¶4.3.) Any unclaimed funds remaining from the Total Settlement Amount after all of the Individual Settlement Amounts and other items (costs, attorneys' fees, enhancement award, taxes and PAGA penalties) have been paid shall remain the property of Defendant. (Harris Decl., Ex. 1, ¶4.3.)

It is estimated that at the time of Preliminary Approval, there will be 144 Class Members, who have collectively worked approximately 4,500 pay periods, or on average, approximately 1.2 years per Class Member. (Harris Decl., ¶13.) After *estimated* deductions of up to $75,000 for attorneys' fees, up to $15,000 in litigation costs, up to $7,500 for the service payment to Plaintiff, approximately $13,177 to pay for the services of the Claims Administrator, the PAGA payment of $5,000 – assuming Court approval of all of these amounts – and approximately $14,000 for Defendant's payroll taxes, the Net Distribution Amount available to Class Members shall be approximately $171,573. (Harris Decl., ¶13.) Based on an estimate of approximately 4,725 total points available to the Class Members (4,500 pay period points plus 225 waiting time penalty points for the 45 former employees), each point equates to a net payment of approximately $36.31 per point. (Harris Decl., ¶13.) Class Members who file a valid, timely Claim Form will receive their portion of the Net Settlement Amount, which is defined as the Individual Settlement Amount. (Harris Decl., Ex. 1, ¶4.3.) Thus, the <u>average net payment</u> – after payment of administration costs, attorneys' fees and costs, a service award, payroll taxes and PAGA penalties – to all eligible Class Members will be approximately $1,191.47. (Harris Decl., ¶13.)

**B.**     TAX IMPLICATIONS.

As explained in the Settlement, the Parties agree that fifty percent (50%) of all payments to Class Members will be treated as wages subject to W-2 reporting.  (Harris Decl., Ex. 1, ¶4.4.)  Therefore, normal payroll taxes and withholdings will be deducted pursuant to state and federal law, and all required payroll contributions will be made on these amounts.  Fifty percent (50%) of the payments will be treated as prejudgment interest and statutory non-wage payments on which there will be no tax withholding and for which an IRS Form 1099 shall be issued if the payment is above the minimum threshold required for the issuance of a Form 1099.  Id.

**C.**     PLAINTIFF'S SERVICE PAYMENT.

Mr. Lounibos continues to assist counsels' work on this case and a declaration with respect to the services he has performed has been filed concurrently with the instant motion.  The Settlement provides for payment to Mr. Lounibos of a service payment on account of the services that he has rendered as Class Representative.  See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) ("Incentive *awards* are fairly typical in class action cases.  Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.") (emphasis in original) (internal citations omitted). Plaintiff's service award is entirely at the discretion of this Court, a fact that is referenced in the proposed Notice to Class Members.

Plaintiff is entitled to an additional amount for the services he has rendered as a Class Representative.  Incentive awards "are not uncommon and can serve an important function in promoting class action settlements," Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. 2002), and "[c]ourts routinely approve incentive awards to compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  In re S. Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), reversed on other grounds, 191 F.3d 453 (6th Cir. 1999).  See also Staton v. Boeing Co., 327 F.3d 938, 100 (9th Cir. 2001) ("The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the [p]laintiffs have taken to protect the interests of the class, the degree to which the class has

benefited from those actions, . . . [and] the amount of time and effort the Plaintiffs expended in pursuing the litigation.'") (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1997)).

The decision whether to award an incentive payment to a class representative, and the size of that award, is entirely within the trial court's discretion. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458, 462 (9th Cir. 2000). "The criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vraken v. Atl. Richfield Co., 901 F. Supp. 294, 299–300 (S.D. Cal. 1995) (approving an award of $50,000 to a named plaintiff who did not receive a great personal benefit from the common fund).

The purposes for which courts award incentive payments are threefold. First, service awards compensate class representatives for work done by them on behalf of the class under a quantum meruit theory. See Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 251 (S.D. Ohio 1991). This is the same reason attorneys' fees, expert fees, and other costs of litigation are generally deducted from the total settlement amount – to prevent a windfall to the class. Second, service awards are used to compensate class representatives for risks undertaken by them in bringing the class action. See, E.g., In re Continental Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992). These risks include retaliation resulting in personal or financial harm, discrimination, trouble finding employment, and significant financial risk. See, e.g., Cook, 142 F.3d at 1016 (workplace retaliation); Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1220–21 (S.D. Fla. 2006) (financial retaliation); Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co., 76 F.R.D. 173, 181 (S.D.N.Y. 1977) (discrimination): Glass v. UBS Fin. Servs., Inc., 2007 WL 221862 at *16 (N.D. Cal. Jan. 26, 2007) (trouble finding employment); Enterprise Energy Corp., 137 F.R.D. at 251 (significant financial risk). Third, some courts award service awards to class representatives in recognition of their willingness to act as a private attorney general. See, e.g., Re Continental/Midlantic S'holders Litig., 1987 WL 16678 at *7 (E.D. Pa. Aug. 29, 1987).

In light of Plaintiff's willingness to come forward with this action on behalf of Defendant's

employees, an enhancement award of up to $7,500 is reasonable.  See, e.g., Cook, 142 F.3d at 1016 (approving an incentive award of $25,000 to a class representative); Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.), 2007 WL 1468847 at *19 (E.D. Pa. May 14, 2007) (award of $75,000 in case with $39,750,000 settlement); Glass, 2007 WL 221862 at *17 (award of $25,000 to each of four class representatives from settlement of $45,000,000); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 28 (E.D. Pa. 1985) (approving an incentive award of $20,000 apiece to two class representatives).

In furtherance of this action, Plaintiff also has expended much time with counsel, having searched for and provided counsel with extensive documentation, explained the documentation and information, had his deposition taken, and participated in an all day mediation at JAMS in San Francisco.  (See Declaration of Donald Lounibos In Support of Motion for Preliminary Approval ("Lounibos Decl."), ¶¶6-13.)  Additionally, Plaintiff has met with counsel by telephone and/or in person on numerous occasions.  (Id.)  At final approval, this Court may decide to award a reasonable service award, not to exceed $7,500.

**D.** RELEASE OF CLAIMS**.**

Under to the proposed Settlement, the release has been narrowly crafted to address only matters properly resolved in this case. (Harris Decl., Ex. 1, ¶¶ 5.1 – 5.3.)  In particular, the release states the following:

5.1     Upon the final approval of the Settlement by the Court, and except as to such rights or claims as may be created by this Agreement, each member of the Settlement Class (other than opt-outs), regardless of whether he or she has timely submitted a Claim Form, will fully and forever release and discharge KEYPOINT, including its former and present parent companies, subsidiaries, divisions, concepts, related or affiliated companies, shareholders, officers, directors, employees, partners, agents, representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be jointly liable with any of the foregoing ("Released Parties") from any claims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or unknown, suspected or unsuspected, arising from: (1) the Action and any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business and Professions Code, claims under PAGA, claims for restitution and other

equitable relief, liquidated damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, other compensation or benefits; and (2) any alleged wage and hour violations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, contract, tort or other theory of liability under state or local law, by any Class Member against the Released Parties (collectively, the "Released Claims"). In addition, any Class Member who timely Submits a Claim Form will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties (collectively, the "FLSA Released Claims"). The release will include any claims arising from or that may have arisen from the Parties' respective prosecution and/or defense of this litigation. The release will apply to the Covered Time Frame and include any cause of action alleged in or which could have been alleged based on the facts in the Complaint or any Amended Complaint that may be filed prior to the approval of this settlement. All Released Claims are released for all Class Members regardless of whether they submit a Claim or receive any payment under the Settlement unless they Opt-Out of the Settlement, and all FLSA Released Claims are released for all Class Members who timely submit a Claim, regardless of whether they receive any payment under the Settlement. The Released Claims and FLSA Released Claims do not include claims for workers' compensation benefits or any of the claims that may not be released by law or that are not based on the facts as alleged in the Complaint.

5.2     The releases described above will cover all remedies that have been or could be claimed for the wage and hour causes of action described in the Action including but not limited to, statutory, constitutional, contractual and common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief. The release will cover all statutory violations that could be claimed for the causes of action described in the Action including but not limited to, the federal Fair Labor Standards Act (for those Class Members who submit claims), the California Labor Code Sections 96 through 98.2 *et seq.*, the California Payment of Wages Law, and in particular, California Labor Code §§200 *et seq.*, including California Labor Code §§200 through 243, and §§203 and 218 and 218.5 in particular, California Labor Code §§300 *et seq.*; California Labor Code §§400 *et seq.*; California Working Hours Law, California Labor Code §§500 *et seq.*, California Labor Code §1194; the

California Unfair Competition Act, and in particular, California Business & Professions Code §§17200 *et seq.*; the PAG Act, codified at California Labor Code §§2698 through 2699; California Code of Civil Procedure §1021.5; and any other provision of the California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, in all of their iterations.  Nothing in this paragraph is intended to extend the scope of the release applicable to the Settlement Class Members as described in Paragraph 5.1.

5.3     The release of claims provided by this Agreement includes claims that are described in the Action but that a Settlement Class Member does not know or suspect to exist in his or her favor against the Released Parties as of the date of preliminary approval of this settlement by the Court. Each Settlement Class Member who does not opt-out, including the Class Representative, waives all rights and benefits afforded by Section 1542 of the California Civil Code as to unknown claims and does so understanding the significance of that waiver.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Nothing in this paragraph is intended to extend the scope of the release applicable to the Settlement Class Members as described in Paragraph 5.1

(Harris Decl., Ex. 1, ¶¶5.1 – 5.3.)

**E.**     EXCLUSIONS (OPT-OUTS) AND OBJECTIONS.

As the Settlement makes clear, Class Members will be given an opportunity to exclude themselves from the Settlement, as well as an opportunity to object to the Settlement.  (Harris Decl., Ex. 1, ¶¶6.6 – 6.8.)  The Notice of Pendency of Class Action and Proposed Settlement (hereinafter "Notice") provides instructions concerning exclusions and objections. (Harris Decl., Ex.2).  Class Members who wish to object to the Settlement must file a written objection within thirty (30) calendar days from the date the Claims Forms were mailed.  (Harris Decl., Ex. 1, ¶6.7.)  Class Member will have sixty (60) calendar days from the date the Notice and Claim Forms are mailed to submit the completed Claim Form or request exclusion.  (Harris Decl., Ex. 1, ¶6.6.)

**F.**     PAGA Payment to the LWDA.

The Settlement provides for a PAGA payment of $5,000 to the LWDA in settlement of any alleged civil penalties owing to the named Plaintiff, the members of the Settlement Class, and the State

1  of California under PAGA (California Labor Code section 2698 *et seq.*).  (Harris Decl., Ex. 1, ¶4.5.)

2  Civil penalties recovered as part of a proposed settlement shall be approved by the Court.  See Cal. Lab.

3  Code § 2699(l) ("The superior court shall review and approve any penalties sought as part of a proposed

4  settlement agreement pursuant to this part.").  Plaintiff contends that a $5,000 PAGA payment is fair and

5  adequate.  Additionally, settlement checks to participating Class Members not negotiated within 180

6  days from their issue date shall be considered null and void and such funds resulting from the failure of a

7  participating Class Member to timely cash his or her settlement check shall be paid to The National

8  Veterans Legal Services Program.  (Harris Decl., Ex. 1, ¶7.5.)

9  **VI.   CLASS-NOTICE PROCEDURE.**

10          The proposed notice will satisfy all applicable requirements, including due process.  (Harris

11  Decl., Ex. 1, ¶¶ 6.1 – 6.13; Ex. 2.)  Within fourteen days following the Court's entry of an order of

12  preliminary approval, Defendant will provide to the Claims Administrator a list of Class Members, and

13  their last known address, telephone number (if available), Social Security Number, dates of employment

14  and total pay periods worked in a Covered Position(s) during the Covered Timeframe.  (Id.)  Within

15  twenty-eight days after the date of preliminary approval, the Claims Administrator will send the Notice

16  and Claim Form to each Class Member via first-class mail using the most current mailing-address

17  information available.  (Id.)  The Notice, a proposed copy of which is attached as Exhibit 2 to the Harris

18  Decl., will include an explanation of the Class Member's right to be excluded from the Settlement Class

19  by submitting a written request for exclusion.  (Harris Decl., Ex. 2.)  Attached to the Notice will be a

20  Claim Form and Release ("Claim Form"), a proposed copy of which is attached to the Harris Decl. as

21  Exhibit 3.  (Harris Decl., Ex. 3.)  Each Claim Form will show the number of pay periods the Class

22  Member worked in a Covered Position(s) during the Covered Timeframe along with the points allocated

23  to the Class Members.  (Id.)  If a Class Member disputes the number of pay periods listed on his or her

24  Claim Form, the Class Member may provide written documentation to the Settlement Administrator

25  establishing the pay periods that the Class Member contends that he or she worked in a Covered

26  Position(s) during the Covered Timeframe.  (Id.) Each Class Member will have sixty (60) calendar days

27  from the date the Claim Forms were mailed to submit the completed Claim Form.  (Id.)  Thirty (30) days

28  after the initial mailing of the Notice and Claim Form, the Settlement Administrator will mail to each

1  Class Member who has not responded with the return of a Claim Form or a request for exclusion, a

2  postcard to remind each such Class Member to submit a Claim Form before the deadline in the form

3  approved by the Court.  (Id.)  The parties contend that the proposed notice will satisfy all applicable due

4  process requirements.  (Harris Decl., Ex. 1, ¶¶ 6.1 – 6.13.)

5  **VII.    ATTORNEYS' FEES AND COSTS.**

6          The Settlement provides that Class Counsel's attorneys' fees and costs shall be paid from the

7  $300,000 settlement amount, in an amount to be approved and ordered by the Court after consideration

8  of Class Counsel's application for attorneys' fees and costs.  (Harris Decl., Ex. 1, ¶4.7.)  Defendant has

9  agreed not object to an award to Class Counsel of fees in an amount up to $75,000 and costs up to

10  $15,000.  (Harris Decl., ¶1 at ¶4.7.)  The Notice provides that Class Counsel may request up to this

11  amount in fees and costs and that Class Members will have an opportunity to object.  (Harris Decl., Ex.

12  2.)  Class Counsel will file a motion seeking an award of fees and costs, which will be filed on or before

13  the date the Notice and Claim Form are sent out to Class Members by the Claims Administrator.  (Harris

14  Decl., Ex. 1, ¶4.7.)  Accordingly, compensation for Class Counsel will be left entirely to the

15  determination of the Court.

16  **VIII.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

17          "The court may approve a settlement . . . that would bind class members only after a hearing and

18  on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(c).

19  According to the Ninth Circuit:

20          Assessing a settlement proposal requires a district court to balance a number of factors:
21          the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of
            further litigation; the risk of maintaining a class action status throughout the trial; the
22          amount offered in the settlement; the extent of discovery completed and the stage of the
            proceedings; the experience and views of counsel; . . . and the reaction of the class
23          members to the proposed settlement.

24  Dunleavy, 2132 F.3d at 458 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Of

25  course, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be

26  examined for overall fairness."  Hanlon, 150 F.3d at 1026.  However, certain factors may predominate in

27  different factual contexts.  Indeed, one factor may predominate over *all* the others and provide sufficient

28  grounds for approval of a settlement.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir.

1993).

A.    THE TERMS OF THE PROPOSED SETTLEMENT ARE FAIR.

Settlement is an extremely attractive option for Plaintiff and Defendant, given the reasonable arguments that can be made by both sides.  In other words, litigation is always uncertain, and Plaintiff could lose at trial just as easily as they could prevail.  Plaintiff contends that Defendant violated the California Labor Code by failing to provide Class Members with proper and timely minimum wage and overtime wages.  Plaintiff's basis for the minimum wage and overtime claim is that Plaintiff and Class Members worked "off-the-clock" hours for which they were not compensated.  Further, Plaintiff contends that the ten-minute paid rest periods and thirty-minute unpaid meal breaks mandated by sections 226.7 and 512 of the California Labor Code and the IWC Wage Order were not provided to Plaintiff and Class Members.  Accordingly, Plaintiff contends that Defendant's employees are entitled to "one additional hour of pay at [their] regular rate of compensation for each work day that [a] meal or rest period [w]as not provided."  Cal. Lab. Code § 226.7(b).  In addition, Plaintiff contends that Defendant willfully failed to pay in a timely fashion all wages due to those Class Members whose employment with Defendant had been terminated.  Accordingly, Plaintiff contends that those employees are entitled to the continuing wages specified by section 203 of the California Labor Code.  Plaintiff also contends that Defendant failed to issue pay stubs that contain all of the information required by the California Labor Code.  Finally, Plaintiff contends that Defendant failed to maintain accurate payroll records in accordance the section 1174 and IWC Wage Order 4.  Defendant vigorously disputes Plaintiff's contentions.

Settlement is an attractive option with respect to Plaintiff's unpaid minimum wage/overtime claim and meal-and-rest break claim.  Based on a review of information produced by Defendant and on discussions with Defendant's counsel, Plaintiff's counsel acknowledges that some may argue that the amount of unpaid overtime and/or number of breaks missed by any given Class Member may require a rather individualized inquiry, with a result that class certification might be denied on the unpaid-overtime claim and/or meal-and-rest-break claim.  This is especially so in light of the challenges Plaintiff would face in demonstrating "off-the-clock" work that was allegedly performed but not paid to Plaintiff and Class Members.  Settlement is also an attractive option with respect to Plaintiff's continuing-wages

claim.  The California Labor Code requires that an employer pay continuing wages only if its failure to pay all wages upon termination was willful.  <u>See</u> Cal. Lab. Code § 203.  It is far from settled whether the failure to pay off-the-clock overtime wages or wages on account of foregone meal and rest breaks results in continuing-wages liability.  <u>See</u> Hon. Ming W. Chin, et al., <u>California Practice Guide:  Employment Litigation</u> ¶ 11:1464.1 (The Rutter Group 2008)  ("Employers may argue that because 'wages' and overtime pay have different sources, Lab. Code § 203's waiting time penalties for 'wages' do *not* apply to overtime pay  [<u>See</u> <u>Earley v. Sup. Ct.</u> (<u>Washington Mut. Bank, F.A.</u>) (2000) 79 Cal. A4th 1420, 1430, 95 CR2d 57, 63—'An employee's right to wages and overtime compensation clearly have different sources'; <u>see also</u> <u>Wilcox v. Birtwhistle</u> (1999) 21 C4th 973, 979, 90 CR2d 260, 264—words and phrases given a particular meaning in one part of a statute must be given same meaning in other parts of the statute; <u>Mamika v. Barca</u> (1998) 68 CA4th 487, 493, 80 CR2d 175, 178—penalty of continued 'wages' for late payment is computed by reference to daily straight-time pay (not overtime)].") (emphasis in original).  <u>Cf.</u> <u>Barnhill v. Robert Saunders & Co.</u>, 125 Cal. App. 3d 1, 7 (1981) (explaining that liability under section 203 is improper where an employer had deducted a setoff from an employee's final paycheck at a time when the law governing the propriety of setoffs from employees' paychecks was unclear.)  Insofar as it does not result in continuing-wages liability, the extent of Defendant's liability may be reduced significantly.

Furthermore, as a class action, this case presents a clear risk of lengthy and expensive litigation. It would probably be another two years before this case went to trial so that, *inter alia*, the parties could properly complete class discovery, Plaintiff could file a motion for certification, and the parties could file cross-motions for summary judgment.  That said, the parties have, in fact, conducted extensive formal and informal discovery.   (Harris Decl., ¶7.)  Defendant provided Plaintiff with documentation and information regarding the employment records of Plaintiff and a statistically significant sample of 25% of the Class Members.  Nevertheless, the law makes clear that exhaustive, protracted, and costly discovery need not be conducted in a class action before a settlement can be reached.  <u>7-Eleven Owners for Fair Franchising</u>, 85 Cal. App. 4th 1135, 1150 (2000).  "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement . . . . '[N]otwithstanding the status of

discovery, Plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'" Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239–40 (9th Cir. 1998) (citations omitted). Here, there was sufficient investigation, depositions and informal discovery conducted to permit counsel to enter into the Settlement.

With the proposed settlement, participating Class Members will look to receive shares of a gross fund totaling $300,000, less the amount awarded to Class Counsel for fees and costs, administration costs, a service award to the named Plaintiff, and payment to the LWDA pursuant to PAGA. This $300,000 gross fund is a substantial amount. The Ninth Circuit opinion in Rodriguez v. West Publishing Corp., 563 F. 3d 948 (9th Cir. 2009), establishes that class settlements of this nature should focus on the recovery of *actual losses* rather than recovery of *penalties* (such as Plaintiff's claims under sections 203 and 226 of the Labor Code).[2] Viewed in that light, and assessing the general amount that shall be recovered by each Class Member, the Settlement is entirely reasonable and favorable.

Obviously, the reaction of Class Members to the proposed Settlement cannot be known until preliminary approval is granted, notice sent out, and responses to that notice received. That said, Class Counsel is of the view that the Settlement is reasonable for all involved. Again, Class Counsel has substantial experience in prosecuting class actions, including actions involving the application of state and federal wage-and-hour laws. (Harris Decl. ¶2.) While acknowledging that some persons might feel that Defendant should pay more and others might feel that Defendant is paying too much, the

---

[2] It is submitted that the decision in Rodriguez, an antitrust class-action lawsuit, supports the granting of preliminary approval in this case. In Rodriguez, as here, most of the potential damages were funds that are theoretically recoverable as penalties: in Rodriguez, threefold "treble damages," Rodriguez, 563 F. 3d at 964 (citing 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained . . . .")); here, penalties for violations of the California Labor Code. Rodriguez teaches that, in considering whether to approve an antitrust class-action settlement, a court can conclude that the settlement is "reasonable even though it evaluate[s] the monetary potion of the settlement *based only on an estimate of single damages* [rather than treble damages]." Id. at 955. See also id. at 964–66 ("This circuit has long deferred to the private consensual decision of the parties. See Hanlon, 150 F.3d 1027. Experienced counsel such as those representing all the parties in this case will certainly be aware of exposure to treble damages in an antitrust action."). Similarly, here, the Court may consider the Settlement based only on an estimate of the actual damages, putting the penalty aspects of the case to the side in the process. Given the uncertainty and the risks faced by the parties to the litigation, it is reasonable for this Court to give preliminary approval of the settlement. Rodriguez was recently followed in Medearis v. Oregon Teamster Employers Trust, 2009 U.S. Dist. LEXIS 53453 (D. Or. filed June 19, 2009).

1    undersigned is of the opinion that the proposed Settlement represents a reasonable balancing of the

2    various strengths and weaknesses borne by each of the parties.  Considering the inherent risks, hazards,

3    and expenses of carrying the case through trial, Counsel is of the opinion that the settlement is fair,

4    reasonable, and adequate.

5         B.   LIKELY DURATION OF FURTHER LITIGATION.

6         While this action is pending, Defendant's California employees remain uncompensated for the

7    alleged violations of state and federal labor law.  Granting approval of this class-action settlement would

8    create a settlement that would remedy those violations.  However, because the putative Class has not

9    been certified, the likely duration of further litigation would at least be more than an additional year, and

10   possibly many years. (Harris Decl. ¶9.)  In light of the lengthy time necessary to litigate class actions, the

11   payment through the Settlement has meaningful value to the Class Members even apart from the

12   contingent nature of any recovery were this case litigated to conclusion.

13        C.   THE AMOUNT OFFERED IN THE SETTLEMENT.

14        The total settlement amount is $300,000.  Although this is not the amount that either Plaintiff or

15   Defendant hoped for, it does represent a compromise by the parties in light of the risks and costs of

16   further litigation.  Under the Settlement, the average gross recovery for each participating Class Member

17   is estimated to be approximately $2,000.00, or an average net recovery of approximately $1,191.47.

18   (Harris Decl. ¶13.)  Given the risks inherent in this case, as with all class actions, Plaintiff submits that

19   that is an entirely reasonable amount for the settlement of this case.  (Harris Decl. ¶13.)  In most cases,

20   "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

21   expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop v. DIRECTV, Inc., 221

22   F.R.D. 523, 526 (C.D. Cal. 2004).  Indeed, settlement is encouraged in class actions where possible.

23   Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point

24   out that there is an overriding public interest in settling and quieting litigation.").

25        D.   THE EXTENT OF DISCOVERY COMPLETED AND STAGE OF THE PROCEEDINGS.

26        Both side conducted depositions and engaged in significant formal and informal discovery, all in

27   anticipation of the mediation that took place with Hon. David A. Garcia at JAMS on November 2, 2012.

28   (Harris Decl. ¶7.)  As set forth *supra*, a substantial amount of information and relevant documentation

was exchanged and reviewed as a result of informal requests for production and during settlement

negotiations.  (Harris Decl. ¶7.)  Additionally, the parties have conducted numerous informal interviews

regarding the background of the case.  (Harris Decl. ¶7.)  The investigation and depositions, as well as

the information and documentation provided by Defendant, allow counsel for Plaintiff to conclude that

this settlement is fair, reasonable and in the best interests of the Class Members.  (Harris Decl. ¶13.)

      **E.**     EXPERIENCE AND VIEWS OF COUNSEL.

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should,

rely upon the judgment of experienced counsel for the parties.  The basis for such reliance is that

"[p]arties represented by competent counsel are better positioned than courts to produce a settlement that

fairly reflects each party's expected outcome in the litigation."  In re Pacific Enters. Sec. Litig., 47 F.3d

373, 378 (9th Cir. 1995). Counsel for Plaintiff has substantial experience in prosecuting class actions,

including actions that involve the application of the California Labor Code. (Harris Decl. ¶2.)  All

counsel are of the opinion that the proposed Settlement represents a very reasonable bargain for both

sides, given the inherent risks, hazards, and expenses of carrying the case through trial.  (Harris Decl.

¶13.)

      **F.**     REACTION OF CLASS MEMBERS TO THE PROPOSED SETTLEMENT.

The reaction of Class Members to the proposed settlement cannot be known until preliminary

approval is given, notice is sent out, and responses to that notice are received.

**IX.**    **APPOINTMENT OF A CLAIMS ADMINISTRATOR.**

The Settlement provides for the appointment of a Claims Administrator to administer the claims

process.  The California-based Claims Administrator chosen by the parties is Gilardi & Co., LLC, a

reliable firm. (Harris Decl. ¶10, Ex. 4.)  The estimated cost to administer the settlement, $13,177, is

entirely reasonable based on counsel's experience and the extensive steps the Claims Administrator will

take in order to provide notice to the Class Members.  (Harris Decl. ¶10, Ex. 4.)

**X.**    **CONCLUSION.**

It is respectfully submitted that the settlement is fair, reasonable, and adequate.  The Court

should grant preliminary approval of the Settlement, grant conditional certification of the Class, confirm

the Class Counsel and Class Representative, appoint the Claims Administrator, approve the Notice and

Claim Form, and set the matter for a final approval hearing, at which time the fee requests may be addressed.

Dated:  March 28, 2013                    NORTH BAY LAW GROUP

                                          _____/s/_____
                                          David S. Harris
                                          *Attorneys for Plaintiff*