UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD LOUNIBOS,<br><br>    Plaintiff,<br><br>    v.<br><br>KEYPOINT GOVERNMENT SOLUTIONS INC,<br><br>    Defendant. | Case No. 12-cv-00636-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 38 |

In this putative wage-and-hour class action and collective action hybrid, Plaintiff Lounibos moves for preliminary approval of a proposed settlement.[1] For the reasons set for below, the motion is DENIED.

## I.  BACKGROUND

**A.  Lounibos' Claims**

Defendant Keypoint Government Solutions provides investigative and risk-mitigation services to government organizations. Compl. ¶ 3, ECF No. 1. Plaintiff Donald Lounibos was employed by Keypoint as an investigator from September 2009 to October 2011. Id. ¶ 5. In the course of his employment, Lounibos conducted background investigations on potential government employees and prepared reports for Keypoint after the conclusion of his investigations. Id. Keypoint assigned work to Lounibos "via a secure computer" and gave him strict deadlines by which he had to complete each investigation and report. Id. ¶ 6. Though Lounibos frequently was unable to complete his assigned tasks within an eight-hour work day, the computer system through which Lounibos had to report his work hours did not allow him to enter

---

[1] Defendant Keypoint did not file an opposition or statement of non-opposition with respect to Lounibos' motion as required by Civil Local Rule 7-3.

1   time in excess of eight hours for any given day.  Id.

2   In the complaint, which he filed on February 9, 2012, Lounibos alleges that Keypoint violated various state and federal labor laws by failing to pay him minimum and overtime wages; to provide him rest breaks, meal breaks, pay statements, and copies of signed personnel documents; and to maintain accurate payroll records.

6   Lounibos seeks to represent a class composed of "all individuals who were employed in a Covered Position during the Covered Time Frame."  Mot. at 5-6, ECF No. 38; Harris Decl., Ex. 1 ¶ 1.11, ECF No. 39.  Covered Positions are defined as "the positions described in the operative Complaint, specifically including all natural persons who were employed by Defendant in California as non-exempt workers in the position of Investigator or similar position."  Harris Decl., Ex. 1 ¶ 1.7.  The Covered Time Frame is defined as "the period of time beginning June 1, 2009 through the date of preliminary approval of the Settlement."  Harris Decl., Ex. 1 ¶ 1.6.

13  Lounibos asserts the following nine claims on behalf of himself and the putative class members: (1) failure to pay minimum wages and overtime compensation in violation of California Labor Code Sections 510, 1194, 1198 and Industrial Welfare Commission ("IWC") Wage Order 4; (2) continuing wages as a penalty under California Labor Code Sections 201 to 203; (3) failure to provide accurate itemized wage statements in violation of California Labor Code Section 226; (4) failure to maintain accurate payroll records in violation of California Labor Code Section 1174 and IWC Wage Order 4; (5) failure to provide adequate rest periods in violation of California Labor Code Section 226.7 and IWC Wage Order 4; (6) failure to provide adequate meal periods in violation of California Labor Code Section 226.7 and IWC Wage Order 4; (7) failure to pay minimum or overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (8) failure to provide signed documents in violation of California Labor Code Section 226(f); and (9) violations of California's Business and Professions Code Section 17200.

25  In the complaint, Lounibos seeks unpaid wages and penalties for himself and the putative class members and the issuance of an injunction barring Keypoint from further violating the state and federal labor laws at issue in this action.

**B.     Stipulated Settlement Agreement**

The parties participated in a mediation conducted by The Honorable David A. Garcia of JAMS on November 2, 2012. Harris Decl. ¶ 8. Before the mediation, the parties exchanged "informal discovery," which included complete hourly employee payroll data for 25% of the putative class; Keypoint's policies, handbooks, and training materials; and other relevant documents. Id. ¶ 7. Lounibos' counsel interviewed numerous witnesses and took the deposition of Keypoint's Chief Personnel Officer and Keypoint's Field Manager, who was responsible for the implementation of Keypoint's policies and practices with respect to Lounibos and "more than one-half of the putative class." Id.

The parties signed a stipulated settlement agreement in March 20, 2013, pursuant to which Keypoint agreed to pay a total settlement amount of $300,000. Harris Decl., Ex. 1 ¶ 4.1. The net distribution amount available to class members would be equal to the total settlement amount of $300,000 minus (1) up to $75,000 in attorney's fees, which is 25% of the total settlement fund; (2) costs and expenses of up to $15,000; (3) an incentive award for Lounibos of up to $7,500; (4) claim administration fees of $13,177; (5) a PAGA penalty of $5,000; and (6) applicable employer payroll taxes of $14,000. Mot. at 7-8. Assuming all of these deductions, the amount available for distribution to class members would equal $171,573. Harris Decl. ¶ 13.

The net distribution amount would be divided among those class members who submitted a timely claim. Each of those class members would receive an individual settlement amount, which would be based on the following point system. Each class member would receive one point for each pay period during which she was employed during the class period and five additional points if that class member left her employment with Keypoint during the class period. Harris Decl., Ex. 1 ¶ 4.3. Counsel for Lounibos estimates that there are approximately 144 class members and that these class members collectively worked a total of 4,500 pay periods, or an average of 1.2 years per class member. Id. The total number of points available for class members is 4,725, which is comprised of 4,500 pay-period points available to all class members and 225 waiting-time penalty points available only to the 45 total employees who left their employment with Keypoint during the class period. Each point would be worth approximately

3

1  $36.31.[2]  This means that the average individual settlement amount ($171,573 divided by 144)

2  would be $1,191.47 before employee payroll taxes are deducted from that amount. Keypoint

3  would treat 50% of each individual settlement amount as wages subject to payroll taxes.

4  As part of the settlement, Lounibos and the putative class members would release their

5  claims against Keypoint in two ways:

6  (1) Any individual who falls within the class definition and does not opt out would

7  fully release Keypoint from any claims or other liability, "whether known or unknown," arising

8  out of the claims asserted in the complaint and claims that "could have been made" based on the

9  allegations in the complaint under state law regardless of whether she submits a timely claim form

10  or receives payment under the settlement. Id. ¶ 5.1.

11  (2) Any individual who falls within the class definition and who "timely" submits a

12  claim form would fully release Keypoint from the actual claims asserted in the complaint under

13  the FLSA and any other federal wage-and-hour claims that "were made or could have been made"

14  based on the allegations in the complaint regardless of whether she receives payment under the

15  settlement. Id.

16  Neither of these release categories includes claims for workers' compensation benefits or

17  claims that are not based on the facts alleged in the complaint. Id.

18  **II.   LEGAL STANDARD**

19  The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

20  actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of

21  a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). But,

22  where the "parties reach a settlement agreement prior to class certification, courts must peruse the

23  proposed compromise to ratify both the propriety of the certification and the fairness of the

24  settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In these situations,

25  settlement approval "requires a higher standard of fairness and a more probing inquiry than may

26  normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir.

---

[2] Counsel for both parties confirmed during oral argument that the value of each point would be calculated before the putative class members file claims to receive payment under the settlement.

1    2012) (citation and internal quotation marks omitted).

## III.   DISCUSSION

### A.   Class Certification

A district court may certify a class action under Federal Rule of Civil Procedure 23 if the parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. Id. at 620. Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id. (citations omitted).

As discussed below, Lounibos fails to provide sufficient information to show that commonality, typicality, and predominance under Rule 23 exist. Accordingly, Lounibos' request for conditional certification of the proposed class must be DENIED.

#### 1.   Rule 23(a)

Rule 23(a) contains four threshold requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Id. at 613.

##### a.   Numerosity

The numerosity requirement is satisfied when a plaintiff shows that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Here, Counsel for Lounibos has determined that the proposed class includes approximately 144 individuals. Harris Decl. ¶ 13. Because the joinder of 144 plaintiffs would be impracticable, the numerosity requirement is met.

##### b.   Commonality

The commonality requirement is satisfied when a plaintiff shows that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when the plaintiff's claims "depend upon a common contention" of "a nature that it is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the

1    validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541,
2    2551 (2011).

3    Here, Lounibos argues that "the commonality requirement is met. In this regard, if there is
4    one issue whose resolution will affect all or a significant number of Class Members, then
5    commonality exists." Mot. at 6. This conclusory statement does not establish commonality. See
6    Dukes, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his
7    compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently
8    numerous parties, common questions of law or fact, etc.").

9    While Lounibos seeks to represent "all natural persons who were employed by [Keypoint]
10   in California as non-exempt workers in the position of investigator *or similar position*," he does
11   not describe the nature of these "similar" positions or explain why class members who had such
12   positions were subject to the same actionable treatment and circumstances that Lounibos
13   experienced in his position as investigator. Harris Decl., Ex. 1 ¶ 1.7 (emphasis added). Without a
14   more detailed and factually supported elaboration on each of the positions that Lounibos seeks to
15   represent, the Court cannot conclude that there are no "dissimilarities within the proposed class"
16   that "have the potential to impede the generation of commons answers." Dukes, 131 S. Ct. at
17   2551 (citation and internal quotation marks omitted).

18   **c.    Typicality**

19   Typicality exists if "the claims or defenses of the representative parties are typical of the
20   claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other
21   members have the same or similar injury, whether the action is based on conduct which is not
22   unique to the named plaintiffs, and whether other class members have been injured by the same
23   course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation and
24   internal quotation marks omitted).

25   Here, Lounibos states that his "claims are very similar to those of any and all absent Class
26   Members. Plaintiff alleges he was an investigator for Defendant in the State of California, as with
27   [sic] the other Class Members." Mot. at 6. This bare contention does not establish that the
28   proposed class members, who Lounibos acknowledges have held a number of positions other than

6

1   investigator, suffered injuries similar to the ones that Lounibos allegedly suffered.  Further, even
2   assuming that the class members suffered violations of their rights under the various laws
3   identified in the complaint, Lounibos has not shown that such violations were caused by the same
4   course of conduct by Keypoint.  Accordingly, Lounibos has not provided sufficient information
5   for the Court to determine whether the commonality requirement is met.

####      d.      Adequacy of Representation

A plaintiff may bring claims on behalf of a class only if she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (citation omitted).

Here, Lounibos states that he is an adequate representative because he "has no conflicts of interest with Class Members, as he shares the Class Members' likely desire to be compensated in full pursuant to the California Labor Code and the Fair Labor Standards Act." Mot. at 7.  Because there is nothing on the record indicating that Lounibos or his counsel have any conflicts of interest with the putative class members or that their interests in this case are insufficient to ensure vigorous representation of the class, this requirement is met.

###     2.      Rule 23(b)(3)

This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, Lounibos argues that "questions of law and fact predominate over questions affecting only individual Members.  The only individual determination is the measure of damages." Mot. at 7.  The Court is not able find predominance, however, because Lounibos has not established that the class members who held each of the positions covered by the proposed class definition were subject to the same conditions that led to the injuries that Lounibos suffered.

7

**B.     Fairness of the Settlement**

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citation omitted). A court may not "delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety." Id.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

Here, the proposed settlement has obvious deficiencies, appears to grant preferential treatment to some segments of the class, and does not appear to fall within the range of possible approval. Accordingly, Lounibos' motion for approval of the proposed settlement must be DENIED.

**1.     The Settlement Process**

The stipulated settlement was reached after the parties participated in private mediation, which suggests that the settlement process was not collusive. Moreover, Lounibos asserts that the parties conducted a "substantial investigation" of the claims at issue and engaged in "informal discovery" during the nine-month period between the filing of the complaint in February 2012 to November 2012, when the parties participated in a mediation session. Mot. at 4. These facts support the conclusion that the parties were sufficiently informed about the strengths and weaknesses of Lounibos' claims when negotiating the settlement.

**2.     Obvious Deficiencies**

**a.     Scope of the Releases**

Due process requires that any class member bound by a class action settlement, at a minimum, be afforded the opportunity "to remove himself from the class." Ortiz v. Fibreboard Corp., 527 U.S. 815, 848 (1999) (citation and internal quotation marks omitted). Here, the stipulated settlement agreement is devoid of any provision that would exclude class members who do not receive notice of this litigation. Indeed, the release provisions of the settlement agreement provide that, unless a class member opts out of the litigation, that class member will release all state-law claims against Keypoint that were brought in the complaint or could have been brought against Keypoint based on the allegations in the complaint. Harris Decl., Ex. 1 ¶ 5.1.

A class member cannot opt out of the litigation unless he submits a request to be excluded. Id. ¶ 6.6. A class member cannot request to be excluded unless he has notice of this litigation. Under the settlement agreement, the claims administrator would send a notice and claim form to the last-known address of each class member via first-class mail. Harris Decl., Ex. 1 ¶¶ 6.1-6.13. This proposed notice procedure does not guarantee that each of the putative class members will receive notice. Because the stipulated settlement agreement does not exclude from the settlement any class member whose class notice is returned as undeliverable by the post office, the Court cannot conclude that the settlement agreement affords minimum due process to each of the putative class members.

### b. Release of FLSA Claims

In addition to various claims under California laws, the complaint includes a claim under the FLSA, which requires employers to pay employees an overtime rate of 1.5 times their regular pay rate for hours worked over 40 hours in a week. See 29 U.S.C. § 207(a). An employee asserting a claim under the FLSA cannot assert class claims on behalf of others under Rule 23; instead, the employee may bring a collective action on behalf of himself and other employees "similarly situated." See 29 U.S.C. § 216(b). The FLSA limits participation in a collective action to those parties that opt in to the suit. See id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Here, one of the two proposed releases is not entirely consistent with the FLSA's opt-in

requirement. The first release provision in the stipulated settlement agreement provides that any individual who falls within the class definition and does not opt out will fully release Keypoint from any claims or other liability, "whether known or unknown," arising out of the claims asserted in the complaint and claims that "could have been made" based on the allegations in the complaint under state law, regardless of whether she has timely submitted a claim form or receives payment under the settlement. Harris Decl., Ex. 1 ¶ 5.1. To be entirely consistent with the FLSA, this release provision would need to explicitly state that any claims released by class members who do not opt out do not include claims under the FLSA, because class members cannot adjudicate their FLSA claims through this action unless they affirmatively opt in to the action by providing their written consent.

The second release provision provides that any individual who falls within the class definition and who "timely" submits a claim form will fully release Keypoint from the actual claims asserted in the complaint under the FLSA and any other federal wage-and-hour claims that "were made or could have been made" based on the allegations in the complaint regardless of whether she receives payment under the settlement. Id. Because only class members who affirmatively submit a claim form may release their FLSA claims under this provision, such provision is consistent with the FLSA.

### c.     Notice

The Court finds that the proposed notice is deficient in two ways.

First, the notice does not adequately inform the proposed class members of their rights under the FLSA. The notice informs class members that they will release "claims raised in this case" if they choose to "file a claim/opt in" and that "they must take steps to get out of this case" if they "want to keep their right to sue . . . about the legal issues in this case." Notice at 7, Harris Decl., Ex. 2. The notice does not inform class members that their FLSA claims will not be released or waived if they neither file a claim nor opt out of the action.

Second, the notice does not notify proposed class members that, unless they opt out, they will release their state-law claims even if they never receive a payment under the settlement. See Harris Decl., Ex. 1 ¶ 5.1.

### 3. Preferential Treatment

The Court is not convinced that the proposed scheme for distributing funds to each class member would not unfairly benefit some class members at the expense of others. The distribution scheme is based primarily on the number of pay periods that each of the class members worked. As discussed above, Lounibos seeks to represent individuals who held the position of investigator as well as those who held "similar" positions. Lounibos has provided no information about the nature of these positions. Lounibos also does not identify the range of hourly wages paid to employees in the various job positions he seeks to represent or explain why a settlement payment based entirely on pay periods worked does not provide preferential treatment to class members who worked on a part-time basis or were paid at a lower hourly rate. Without this information, the Court cannot conclude that the settlement does not provide preferential treatment to some class members.

### 4. Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080.

Here, Lounibos states conclusorily that the proposed settlement is reasonable because, although $300,000 "is not the amount that either Plaintiff or Defendant hoped for, it does represent a compromise by the parties in light of the risks and costs of further litigation." Mot. at 19. This bare assertion is insufficient for the Court to determine that the settlement falls within the range of possible approval, because Lounibos provides no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims. Lounibos also does not provide any information concerning the potential range of recovery.

Further, Lounibos does not explain why it would be fair to the putative class members (1) to satisfy Keypoint's employer payroll tax obligation, which totals approximately $14,000, out of the $300,000 total settlement amount; or (2) to calculate the value of the settlement points

11

before all of the putative class members submit their claims, which is likely to result in unclaimed funds that would revert to Keypoint. Both of these settlement terms have the effect of reducing the amount of money available for distribution to the putative class members. See Harris Decl., Ex. 1 ¶¶ 4.2, 4.3. Moreover, with regard to the second issue, the Court has no way to determine, or even estimate, how much money the Class will actually recover from the settlement fund.

For these reasons, the Court cannot conclude that the proposed settlement is reasonable.

## IV. CONCLUSION

Lounibos' motion for preliminary approval of the proposed settlement is DENIED WITHOUT PREJUDICE. Lounibos may file a new motion for preliminary approval of the proposed settlement that cures each of the deficiencies identified in this Order within sixty days of the date this Order is filed. A case management conference will be held on October 2, 2013 at 2:00 p.m.

**IT IS SO ORDERED**.

Dated: July 12, 2013

_____
JON S. TIGAR
United States District Judge