1 │ STEVEN L. HAMMOND (SBN 220521)
  │ Hammond Law Group, P.C.
2 │ One Embarcadero Center, Suite 2360
  │ San Francisco, California  94111
3 │ Telephone:  (415) 955-1915

4 │ DAVID HARRIS (SBN 215224)
  │ North Bay Law Group
5 │ 116 E Blithedale Avenue, Suite 2
  │ Mill Valley, CA 94941
6 │ Telephone:  (415) 388-8788

7 │ Attorneys for Plaintiff
  │ DONALD LOUNIBOS
8 │

9 │         UNITED STATES DISTRICT COURT

10 │        NORTHERN DISTRICT OF CALIFORNIA

11 │

12 │ DONALD LOUNIBOS, individually and
   │ on behalf of all others similarly situated,
13 │
   │                Plaintiff,
14 │
   │     v.
15 │
   │ KEYPOINT GOVERNMENT
16 │ SOLUTIONS, INC., a Delaware
   │ Corporation,  and Does 1-10, inclusive,
17 │
   │                Defendants.
18 │

Case No. 12-CV-0636 (JST)

**NOTICE OF MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF NOTICE PROGRAM;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**

Assigned to Honorable Jon S. Tigar
450 Golden Gate Avenue
San Francisco, CA 94102

Date:    January 9, 2014
Time:    2:00  PM
Court:   Courtroom 9, 19th Floor

TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD:  NOTICE IS HEREBY GIVEN that, on January 9, 2014, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9, located at 450 Golden Gate Avenue, 19th floor, San Francisco, California 94102, Plaintiff Donald Lounibos ("Plaintiff" or "Lounibos") will move for an order granting (1) preliminary approval of the Settlement between Plaintiff and Defendant KeyPoint Government Solutions ("Defendant" or "KeyPoint"); (2) conditional certification of a Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; (3) approval of the Claim Form and method of Class Notice; and (4) appointment of a Claims Administrator.

The Motion will be made and based upon this Notice of Motion and Renewed Motion for Preliminary Approval of Class-Action Settlement, Conditional Certification of Settlement Class and Approval of Notice Program and Memorandum of Points and Authorities in Support Thereof, the Declaration of David S. Harris in Support of Renewed Motion for Preliminary Approval of Class-Action Settlement, the Declaration of Donald Lounibos in Support of Renewed Motion for Preliminary Approval of Class-Action Settlement, and all of the pleadings, papers, and documents contained in the file of the within action.

DATED:  December 12, 2013                           NORTH BAY LAW GROUP

                                                    _____/s/_____

                                                    David S  Harris
                                                    *Attorney for Plaintiff*

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………..….…..…….3

II.     PROCEDURAL BACKGROUND………………………………...……....3

III.    SUMMARY OF THE  CLAIMS AND DEFENSES……. ……………....5

    a.   "Off-The-Clock" Claim………………………………………………....6

    b.   Failure to Maintain Accurate Payroll Time Records ….………………..7

    c.   Meal-and-Rest-Break Violations……………………………………......8

    d.   Wage-Statement Violations………………………………………………8

    e.   Waiting Time Penalties/Continuing Wages……………………………9

IV.     POTENTIAL UNIVERSE OF DAMAGES……………………………9

    a.   "Off-The-Clock" Claim…………………………………………....…10

    b.   Failure to Maintain Accurate Payroll Time Records ….……………….10

    c.   Meal-and-Rest-Break Violations………………………………….....10

    d.   Wage-Statement Violations……………………………………..……11

    e.   Waiting Time Penalties/Continuing Wages………………………….11

V.      CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS ………..11

    a.   Numerosity……………………………………………………………12

    b.   Commonality…………………………………………………………12

    c.   Typicality……………………………………………..………………13

    d.   Adequacy………..…………………………………………………....14

    e.   The Case Also Satisfies The Requirements of Rule 23(b)(3)…..………………11

VI.     SUMMARY OF THE PROPOSED SETTLEMENT…………………………16

    a.   The Settlement and the Payment of Claims……………………………....16

    b.   Tax Implications……………………..………………………………..……18

    c.   Plaintiff's Enhancement Award………………………………………18

    d.   Release of Claims…..…………………………………………………20

    e.   Exclusions (Opt-Outs) & Objections…………………………………22

    f.   PAGA Payment to the LWDA…………………………………………23

1

**VII.   CLASS-NOTICE PROCEDURE**……………………………………………………...**23**

**VIII.  ATTORNEYS' FEES AND COSTS**……………………………………………...…**24**

**IX.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**………...……**25**

    **a.  The Terms Of The Proposed Settlement Are Fair**………………………………**26**

    **b.  Likely Duration of Further Litigation**………………………………………...……**28**

    **c.  The Amount Offered in the Settlement**………………………………………………**29**

    **d.  The Extent of Discovery Completed And Stage of the Proceedings**………………**29**

    **e.   Experience and Views of Counsel**……………………………………………………**30**

    **f.   Reaction of Class Members to the Proposed Settlement**…………………………**30**

**X.   CONCLUSION**………………………………………………………………………**31**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

Allapattah Servs., Inc. v. Exxon Corp.,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................ 20

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997)............................................................................................... 16

Barnhill v. Robert Saunders & Co.,
  125 Cal. App. 3d 1 (1981) .................................................................................... 27

Boeing Co. v. Van Gemert,
  444 U.S. 472, 478 (1980)...................................................................................... 24

Bogosian v. Gulf Oil Corp.,
  621 F. Supp. 27 (E.D. Pa. 1985) .......................................................................... 20

Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.,
  2007 WL 1468847 (E.D. Pa. May 14, 2007) ....................................................... 20

Cicero v. DirecTV, Inc.,
  2010 WL 2991486 (C.D. Cal. 2010)..................................................................... 25

Continental Ill. Sec. Litig.,
  962 F.2d 566 (7th Cir. 1992) ................................................................................ 20

Cook v. Niedert,
  142 F.3d 1004 (7th Cir. 1997) ........................................................................ 19, 20

Craft v. County of San Bernardino,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................... 25

Dunleavy v. Nadler,
  213 F.3d 454 (9th Cir. 2000) ................................................................................ 11

Earley v. Sup. Ct. (Washington Mut. Bank,F.A.)
  79 Cal. App. 4th 1420 (2000) .............................................................................. 27

Elkins v. Equitable Life Ins. of Ia.
  1998 WL 133747, at *19 (M.D. Fla. 1998) ......................................................... 16

Elliott v. ITT Corp.,
  150 F.R.D. 569 (N.D. Ill. 1992)........................................................................... 12

Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,
  137 F.R.D. 240 (S.D. Ohio 1991) .................................................................. 19, 20

Glass v. UBS Fin. Servs., Inc.,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007)........................................................ 20

Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998) ................................................................... 12, 25, 28

Hanon v. Dataproducts Corp.
  976 F.2d 497 (9th Cir. 1992) ........................................................................... 13, 14

In re Activision Sec. Litig.,
  621 F.Supp. 415 (N.D.Cal 1985) ......................................................................... 13

In re Cendant Corp. Derivative Action Litig.,
  232 F.Supp.2d 327 (D. N.J. 2002) ........................................................................ 28

In re Continental Ill. Sec. Litig.,

962 F.2d 566 (7th Cir. 1992) ................................................................ 20

In re Mego Fin. Corp. Sec. Litig.,
   213 F.3d 454 (9th Cir. 2000) ........................................................... 19

In re Pacific Enters. Sec. Litig.,,
   47 F.3d 373 (9th Cir. 1995) ............................................................. 30

Labbate-D'Alauro v. GC Servs. Ltd.,
   P'ship, 168 F.R.D. 451 (E.D.N.Y. 1996) ...................................... 12

Leyva v. Medline Industries, Inc.,
   2013 WL 2306567 (9th Cir. 2013) ................................................ 15

Lightbourn v. County of El Paso,
   118 F.3d 421 (5th Cir. 1997) ........................................................... 12

Linney v. Cellular Alaska P'ship,
   151 F.3d 1234 (9th Cir. 1998) ........................................................ 30

Lozano v. AT&T  Wireless,
   504 F.3d 718 (9th Cir. 2007) ........................................................... 13

Mateo v. V.F. Corp.,
   2009 U.S. Dist. LEXIS 105921, *16-17 (N.D. Cal. 2009) ............. 7

Medearis v. Oregon Teamster Employers Trust,
   2009 U.S. Dist. LEXIS 53453 (D. Or. filed June 19, 2009). ......... 28

Murray v. GMAC Mortgage Corp.,
   2007 WL 1100608 (N.D. Ill. 2007) ................................................ 13

Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................... 29

Officers for Justice v. Civil Serv. Comm.,
   688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) .... 11

Phillips Petroleum Co. v. Shutts,
   472 U.S. 797 (1985) ........................................................................ 15

Re Continental/Midlantic S'holders Litig.,
   1987 WL 16678 (E.D. Pa. Aug. 29, 1987) ..................................... 20

Rodriguez v. West Publ'g Corp.,
   563 F.3d 948 (9th Cir. 2009) ................................................... 18, 28

Rubin v. Wal-Mart Stores, Inc.,
   599 F.Supp.2d 1176, 1179 (N.D. Cal. 2009) ................................... 9

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
   2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. 2002) ............................ 19

Singer v. Becton Dickinson & Co.,
   2010 WL 2196104 (S.D. Cal.2010) ............................................... 25

Staton v. Boeing Co.,
   327 F.3d 938 (9th Cir. 2001) ........................................................... 19

Struhe v. Amer. Equity Inv. Life Ins. Co.
   226 F.R.D. 688, 697 (M.D. Fla. 2005) ............................................ 16

Torrisi v. Tucson Elec. Power Co.,
   8 F.3d 1370 (9th Cir. 1993) ............................................................. 25

Valentino v. Carter-Wallace.,
   97 F.3d 1227 (9th Cir. 1996) ................................................................ 15

Van Vraken v. Atl. Richford Co.,
   901 F. Supp. 294 (S.D. Cal. 1995) ......................................................... 19

Vasquez v. Coast Valley Roofing, Inc.,
   266 F.R.D. 482 (E.D. Cal. 2010) ............................................................ 24

Wal-Mart Stores, Inc. v. Dukes,
   131 S. Ct. 2541 (2011) ............................................................................ 12

White v. Starbucks Corp,
   497 F.Supp.2d 1080 ................................................................................... 9

Wilcox v. Birtwhistle,
   21 Cal. 4th 973 (1999) ............................................................................ 27

Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.,
   76 F.R.D. 173 (S.D.N.Y 1977) ............................................................... 20

7-Eleven Owners for Fair Franchising,
   85 Cal. App. 4th 1135 (2000) ................................................................. 30

**STATUTES**

Cal. Bus. and Prof. Code § 17200 ............................................................. 3, 4

Cal. Lab. Code § 201 ........................................................................... 3, 9, 11

Cal. Lab. Code § 202 ........................................................................... 3, 9, 11

Cal. Lab. Code § 203 .................................................................. 3, 4, 9, 26, 27

Cal. Lab. Code § 226. ......................................................................... 3, 4, 8, 11

Cal. Lab. Code § 226.7 ......................................................................... 3, 10, 26

Cal. Lab. Code § 510. ................................................................................... 3

Cal. Lab. Code § 512. ............................................................................ 3, 26

Cal. Lab. Code § 1174. ......................................................................... 3, 7, 8, 26

Cal. Lab. Code § 1194. ............................................................................... 3

Cal. Lab. Code § 1194.2. ............................................................................ 3

Cal. Lab. Code § 1198. ............................................................................... 3

Cal. Lab. Code § 1198. ............................................................................... 3

Cal. Lab. Code § 2698. ............................................................................. 23

Cal. Lab. Code § 2699. ............................................................................. 23

29 U.S.C. § 216............................................................................................ 3

**RULES**

Fed. R. Civ. P. 23 ..................................................... 3, 12, 13, 14, 15, 25

1

## I.      INTRODUCTION.

2          This Court should grant preliminary approval of the Stipulated Class Settlement Agreement and

3    Release Of All Claims ("Original Settlement"), a copy of which is attached as **Exhibit 1** to the

4    Declaration of David S. Harris in Support of Renewed Motion For Preliminary Approval of Class Action

5    Settlement, Conditional Certification of Settlement Class, and Approval of Notice Program ("Harris

6    Declaration") and the Amendment to Stipulated Class Settlement Agreement and Release of All Claims

7    ("Amendment"), a copy of which is attached as **Exhibit 2** to the Harris Declaration (hereinafter the

8    Original Settlement and the Amendment will collectively be referred to as the "Settlement").  The

9    subject Settlement was entered into between Plaintiff Donald Lounibos ("Plaintiff" or "Lounibos"), on

10   behalf of the absent Class Members whom he seeks to represent, on the one hand, and Defendant

11   KeyPoint Government Solutions ("Defendant" or "KeyPoint"), on the other hand.  This Motion requests

12   that the Court grant preliminary approval of a non-reversionary $240,000 Settlement, finding that there

13   is a *prima facie* showing that it is fair, adequate, and reasonable.  The Motion requests that the Court (1)

14   conditionally certify the modified definition of the Settlement Class, as set forth in the Amendment, (2)

15   approve the mailing of the Notice of Proposed Class Action Settlement and Final Settlement Approval

16   Hearing ("Notice"), a copy of which is attached as **Exhibit 3** to the Harris Declaration, and the Claim

17   Form ("Claim Form"), a copy of which is attached as **Exhibit 4** to the Harris Declaration, (3) appoint

18   David S. Harris of North Bay Law Group and Steven Hammond of Hammond Law Group, P.C., as Class

19   Counsel, (4) approve Plaintiff Donald Lounibos as the Class Representative, (5) appoint Gilardi & Co.,

20   LLC ("Gilardi"), as Claims Administrator, and (6) approve the proposed mechanism for receiving and

21   dealing with claims and notices of election to opt out of the settlement, as set forth in the Original

22   Settlement and Amendment.  Given the uncertainty and risks faced by the parties to this litigation,

23   Plaintiff has determined that a non-reversionary $240,000 settlement is the most desirable way to resolve

24   this matter.  (Harris Decl. ¶¶58-67).

25   ## II.     PROCEDURAL BACKGROUND.

26          This action was commenced as a putative class action on February 9, 2012.  (Harris Decl. ¶2.)  In

27   the Complaint, Plaintiff alleged that Defendant had violated the California Labor Code, including

28   sections 201, 202, 203, 226, 226.7, 510, 512, 1174, 1194, 1194.2 and 1198, Industrial Welfare

Commission Wage Order 4 and 29 U.S.C. § 216.  (Id.)  As alleged in the Complaint, KeyPoint employed Plaintiff as an investigator on an hourly basis from September 2009 through October 2011.  (Harris Decl., ¶3.)  In the Complaint, Plaintiff contends KeyPoint failed to pay minimum wage and overtime compensation, failed to provide proper rest and meal breaks, failed to provide adequate pay statements, failed to maintain accurate payroll time keeping records and failed to provide Plaintiff with copies of signed documents in his personnel file.  (Harris Decl., ¶2.)  The Complaint also seeks miscellaneous penalties, including waiting time penalties pursuant to California Labor Code section 203, civil penalties pursuant to California Labor Code section 226, and additional relief under the California Business and Professions Code section 17200 *et seq.*  (Id.)

KeyPoint contends that it has complied with all applicable laws, including, but not limited to, those relating to payment of wages, hours worked, time keeping obligations, meal and rest breaks, and the provision of accurate wage statements.  (Harris Decl., ¶¶ 5, 6, 9, 12, 15, 17 & 61.)  KeyPoint disputes all material allegations and all claims for damages and other relief made by Plaintiff in the Complaint, or otherwise asserted during the course of the litigation of this action.  (Id.)

Between the filing of this case, in February of 2012, and November 2012, the parties engaged in substantial investigation as well as formal and informal discovery in connection with this action.  (Harris Decl., ¶3.)  KeyPoint provided extensive documents and hundreds of pages of putative class data to Plaintiff and his counsel to review and analyze, which included a comprehensive class list of all California employees and the duration of their employment, complete hourly employee payroll data for 25% of the putative class, KeyPoint policies, handbooks, training materials and other documents relevant to the issues in the litigation.  (Harris Decl. ¶¶ 19, 20 & 62.)  Collectively, the parties interviewed numerous witnesses, including current and former employees, with respect to the facts and issues of the case.  (Id.)  Additionally, Plaintiff took the deposition of KeyPoint's Chief Personnel Officer and the KeyPoint Field Manager who was responsible for the implementation of KeyPoint's policies and practices for Plaintiff and more than one-half of the putative class.  (Harris Decl. ¶19.)

On November 2, 2012, the parties participated in a full-day mediation with an experienced mediator, Hon. David A. Garcia (Ret.) of JAMS in San Francisco. (Harris Decl. ¶20.)  With the assistance of the Judge Garcia, the parties ultimately reached an arms-length settlement, which Plaintiff

submitted to this Court for preliminary approval on March 28, 2013 ("Motion for Preliminary Approval of the Original Settlement Agreement"). (Harris Decl. ¶ 21.) On June 20, 2013, a hearing came on before this Court on Plaintiff's Motion for Preliminary Approval of the Original Settlement Agreement. During the hearing, the Court provided counsel with its feedback, questions and issues regarding the proposed Original Settlement. (Harris Decl. ¶ 22.) On July 12, 2013, the Court issued an Order Denying Motion For Preliminary Approval of Class Action Settlement ("July 12th Order"). In the July 12th Order, the Court stated in pertinent part, "Lounibos' motion for preliminary approval of proposed settlement is DENIED WITHOUT PREJUDICE. Lounibos may file a new motion for preliminary approval of the proposed settlement that cures each of the deficiencies identified in this Order within sixty days of the date this Order is filed." (Id.)

After the Court issued the July 12th Order, the parties went to work addressing the deficiencies set forth in the Original Settlement, as well as the issues identified by the Court at the June 20, 2013, hearing. (Harris Decl. ¶ 23.) In the months thereafter, and after receiving multiple extensions by the Court, the parties entered into the Amendment, which modifies and supplements certain provisions and procedures in the administration of the proposed Original Settlement. (Id.) The parties are confident the Amendment addresses all of the issues and concerns raised by the Court at the June 20, 2013 hearing and in the July 12th Order.

**III.   SUMMARY OF THE CLAIMS AND DEFENSES.**

From approximately September 2009 through October 3, 2011, Plaintiff worked for Defendant as a non-exempt investigator throughout the State of California. (Harris Decl. ¶ 3.) In his capacity as an Investigator, Plaintiff, like all California Investigators, worked out of an office in his home and he would travel throughout California conducting background investigations for the purpose of determining employment suitability of persons who require access to sensitive or classified government information. (Id.) To this end, Plaintiff conducted face-to-face interviews with the subjects who were being investigated, as well as with the subject's neighbors, employers, friends and family. (Id.) Plaintiff also performed record searches at police agencies, courthouses, educational institutions, financial institutions and medical/mental health facilities. (Id.) At the culmination of the investigation, Plaintiff would provide KeyPoint and the government with a report containing a summary of the information obtained

during the investigation.  (Id.)  This report was prepared at the Investigators' homes and transmitted to KeyPoint through a secure computer system.  (Id.)

## A.    "OFF-THE-CLOCK" CLAIM.

Plaintiff contends KeyPoint imposed a requirement that Plaintiff and its other Investigators complete all of their work within an eight hour work day and/or a forty hour work week. (Harris Decl. ¶ 4.)  Plaintiff contends, however, that he and the other Investigators were frequently unable to complete the assigned tasks within an eight hour work day and/or forty hour work week.  (Id.)  Furthermore, in those instances when Plaintiff worked hours in excess of eight in a day and/or forty in a week, Plaintiff contends that the management, who reviewed his time, did not allow him to submit hours in excess of eight in a given day.  (Id.)  Thus, Plaintiff contends that he and the other California Investigators are entitled to overtime and/or minimum wages on account of the "off-the-clock" work Plaintiff and the California Investigators were required to perform.  (Id.)

KeyPoint vigorously disputes Plaintiff's contention that KeyPoint required Plaintiff and California Investigators to work "off-the-clock" and contends that its written policies and actual practice were that employees were instructed to accurately record all hours worked. (Harris Decl. ¶ 5.)  KeyPoint contends that Plaintiff and the other Class Members were never restricted from recording time actually worked, they were responsible for and set their own schedules and recorded their own working hours. (Id.)  KeyPoint further argues that it paid overtime to Plaintiff and Class Members when they worked and recorded any such hours.  (Id.)  KeyPoint asserts that on multiple occasions Plaintiff recorded time over eight hours a day and/or over forty hours in one week and was paid for his time worked.  (Id.) Furthermore, KeyPoint argued that Plaintiff and all California Investigators were required to certify each and every pay period that they accurately reported and recorded all hours worked and that if they failed to do so it would result in disciplinary action.  (Id.)   In support of its defense to Plaintiff's "off-the-clock" claims KeyPoint produce its handbook, as well as slides from an orientation presentation that advised its employees that all time should be accurately reported.  (Id.)  KeyPoint denies that Plaintiff or any of the putative Class Members are owed any regular or overtime wages, much less any derivative penalties.  (Id.)

In order to prevail on an "off-the-clock" claim, Plaintiff must demonstrate that he was instructed

to work off the clock by management, or that KeyPoint had constructive knowledge that work was taking place off the clock.  <u>Mateo v. V.F. Corp.</u>, 2009 U.S. Dist. LEXIS 105921, *16-17 (N.D. Cal. 2009).   In support of his claim, Plaintiff contends that his manager specifically advised him that KeyPoint would not approve any hours recorded in excess of eight in a day or forty in a week.  (Harris Decl. ¶ 6.)  Plaintiff contends that he and his fellow Investigators advised management that the work could not be completed in this time period but that management nonetheless would not approve overtime hours.  (<u>Id</u>.)  "Off-the-clock" claims can be challenging in that defendants have been successful in arguing that in certain circumstances off-the-clock claims are difficult to certify in light of the need to conduct an individual inquiry in order to determine who worked off-the-clock, and how many hours were worked off-the-clock.  Defendant argued that in the instant case, it would be particularly challenging to establish a certifiable "off-the-clock" claim in light of the fact that KeyPoint had no way of knowing how much, or how little, the investigators were really working because they were left to set their own schedules and that their work schedules varied depending upon the schedules of the witnesses they interviewed.  (<u>Id</u>.)

### B.  FAILURE TO MAINTAIN ACCURATE PAYROLL TIME RECORDS.

Plaintiff contends that KeyPoint violated California Labor Code section 1174 and IWC Wage Order No. 4 by failing to keep required payroll records showing the actual hours and/or the beginning and end time worked each day by Plaintiff and Class Members, including the actual hours spent taking a lunch break. (Harris Decl. ¶ 8.)  As a result of this violation, Plaintiff contends that he and his fellow class members are entitled to recover civil penalties of one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.  (<u>Id</u>.)

In response to Plaintiff's claim regarding KeyPoint's alleged failure to maintain complete time records, KeyPoint argued that there is no authority to support a private right of action by the California Investigators under Labor Code section 1174 or IWC Wage Order No. 4 for any omission in regard to the failure to record the starting and ending times of the workday, as well as the starting and ending times for lunch breaks.  (Harris Decl. ¶ 9.)  In support of its argument, KeyPoint's counsel argued that Plaintiff has been unable to locate a single administrative decision or citable case directly on point.  (<u>Id</u>.)

Defendant further argues that California Investigators work out of their homes and make their own schedules and there is no way to confirm the specific times Investigators start and stop working and that Defendant simply requires the Investigators to record the total number of hours they work in a given day. (Id.)  Accordingly, Defendant argues that Plaintiff will be unable to recover any damages for an alleged violation of Labor Code section 1174 and/or IWC Wage Order 4.  (Id.)

### C.   MEAL-AND-REST-BREAK VIOLATIONS.

Plaintiff also contends that he was not always able to take a 30-minute unpaid meal break that began within the first five hours of the work day and/or a 10-minute rest period for every four hours worked or fraction thereof.  (Harris Decl. ¶ 11.)  Plaintiff argued the workload required by KeyPoint prevented Plaintiff and Class Members from being able to take 10-minute rest periods and/or 30-minute unpaid meal breaks.  (Id.)  Plaintiff contends that, in light of their workload and interview schedules, the overwhelming majority of the time Investigators were forced to simply grab food on the run and eat it on the way to their next appointment.  (Id.)

Keypoint's California supplement to is employee handbook states, "[e]mployees who work more than five hours (5) in a day are entitled to an unpaid meal period of at least 30 minutes and a second unpaid meal period of at least 30 minutes if they work more than 10 hours in a day."  (Harris Decl. ¶ 12.)  Additionally, the handbook states, "non-exempt employees are required to take one (1) 10-minute paid break for every four (4) hours of work.  The specific schedule of these breaks will be determined by each office and/or department, and may be changed from time to tome as business needs require."  (Id.)  KeyPoint argued that its California Investigators were regularly reminded by management that they were free to conduct their work day as they see fit, and that they should take time for all required breaks.  (Id.)  KeyPoint argued that management could not pressure Investigators to work through their lunch or rest breaks since the Investigator sets their own schedule, works autonomously in the field and the work that they do can be done at any point during the day.  (Id.)  KeyPoint argues that to the extent Plaintiff or a Class Member failed to take a meal or rest break, it was the choice of that employee to waive their break.

### D.  WAGE-STATEMENT VIOLATIONS.

Plaintiff contends that Defendant failed to provide on his wage statements all of the data required by section 226(a) of the California Labor Code.  In particular, Plaintiff claimed that KeyPoint failed to

provide information concerning the total hours worked by the employee and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  (Harris Decl. ¶ 14.)

Defendant argued that Plaintiff's pay stub claims are derivative of Plaintiff's claim for unpaid wages, such that because Plaintiff claims he was not compensated for all of his "off-the-clock" work, Plaintiff's wage statements were inaccurate.  (Harris Decl. ¶ 15.)  Defendant argues that because his wage statements accurately reflected the hours Plaintiff recorded that he worked each pay period, Plaintiff's paystubs complied with section 226(a) of the California Labor Code.  (Id.)  Thus, Defendant argues that in light of the fact that Plaintiff's claims are derivative wage statement claims, they arguably do not give rise to any cognizable damages. See White v. Starbucks Corp., 497 F.Supp.2d 1080, 1089-1090 (N.D. Cal. 2007); Rubin v. Wal-Mart Stores, Inc., 599 F.Supp.2d 1176, 1179 (N.D. Cal. 2009).

### E.  WAITING TIME PENALTIES/CONTINUING WAGES.

On account of the fact that Plaintiff contends he was not paid all wages that were owed to him at the termination of his employment, Plaintiff argues that he and similarly situated Class Members are entitled to waiting time penalties (or sometimes referred to as "continuing wages"). (Harris Decl. ¶17.) Plaintiff alleges that he has not been paid all overtime wages as detailed above, arguably entitling him to continuing wages pursuant to California Labor Code sections 201 through 203. (Id.) The defense argues the overtime wages were paid correctly, and if there is a violation, it was only on account of the failure of Plaintiff and his fellow class members to accurately record the actual hours worked (i.e. the "off-the-clock" hours), which is at best a technical, derivative violation that would not give rise to waiting time penalties. (Id.)

## IV.  POTENTIAL UNIVERSE OF DAMAGES.

Notwithstanding Plaintiff's damage estimates set forth below, Defendant contends that it has complied with all applicable laws, including, but not limited to, those relating to the payment of overtime wages for all hours worked, California timekeeping obligations, meal and rest breaks and the provision of accurate wage statements.  Thus, Defendant contends that Plaintiff would be unable to certify any of the claims and would recover nothing by way of this litigation.

## A. PLAINTIFF'S "OFF-THE-CLOCK" CLAIM.

Plaintiff conducted a thorough analysis of KeyPoint's payroll records during the applicable time period to prepare an analysis of the potential scope of damages for the "off-the-clock" claim. Plaintiff contends that to the extent he was able to demonstrate that all California Investigators worked one hour of overtime per day throughout the applicable class period, the potential total class-wide damages for "off-the-clock" work would be approximately $1,390,000. (Harris Decl. ¶7.) In order to calculate this potential universe of "off-the-clock" damages, Plaintiff's counsel utilized actual California Investigator overtime rates ranging from $31.74 per hour to $54.09 per hour and an average number of days worked per California Investigator of 323 days during the applicable class period. (Id.)

## B. FAILURE TO MAINTAIN ACCURATE PAYROLL TIME RECORDS

On account of Keypoint's alleged failure to maintain accurate payroll records in accordance with California law, Plaintiff contends that for one year of time recording violations, Keypoint's potential exposure on account of its failure to maintain accurate time records could be up to $5,100 per employee ($100 x first pay period + $200 x 25 pay periods). (Harris Decl. ¶10.) A review of KeyPoint's payroll records indicate that approximately eighty-six percent of the class members are potentially entitled to recover on account of KeyPoint's alleged failure to maintain accurate timekeeping records, with an average of thirty two violations per employee. (Id.) Thus, if Plaintiff were to prevail and recover 100% of the potential penalties available under this claim, the class-wide damages could potentially total $643,000. (Id.)

## C. MEAL-AND-REST-BREAK VIOLATIONS

For purposes of a damage analysis of the potential scope of the meal and rest break violations, it was estimated that on average, Plaintiff and his fellow California Investigators failed to received a timely meal and/or rest period approximately two times per week, which would amount to an average of 130 break violations per employee during the applicable class period. (Harris Decl. ¶13.) California Labor Code § 226.7 and IWC Wage Order 4 require that an employer pay an employee one additional hour of pay at the employee's regular rate of compensation for each work day that a meal or rest period is not provided. Assuming the class-wide average hourly wage of $24.38 per hour, to the extent Plaintiff was able to prevail on his meal and rest break claims, the potential total class-wide damages for break

1    violations would be approximately $374,000.  (Id.)

2          **D.  WAGE-STATEMENT VIOLATIONS.**

3          To the extent Plaintiff were to prevail on the wage statement claims, he and the class member

4    would be potentially be entitled to fifty dollars ($50) for the initial pay period in which a violation

5    occurred and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not

6    exceeding an aggregate penalty of four thousand dollars ($4,000).  In his damage analysis, based on the

7    periods of employment for the settlement class, Plaintiff contends that were he to prevail entirely on the

8    California Labor Code section 226 claim, the maximum exposure Defendant faces for this claim is

9    approximate damages in the amount of $374,100 (or approximately $3,170 per settlement class

10   member).  (Harris Decl. ¶16.)

11         **E.  WAITING TIME PENALTIES/CONTINUING WAGES**

12         To the extent Plaintiff was able to prevail entirely on his waiting time penalties claim and

13   demonstrate that KeyPoint "willfully fail[ed] to pay" former employees within the time limits set by

14   sections 201 or 202, the wages of Plaintiff and all former employees would continue as a penalty for a

15   maximum of thirty days.  California Labor Code § 203(a).  Thus, assuming an average daily rate of

16   $235.10, the 43 former employees in the class would be entitled to a maximum recovery of $303,279 for

17   waiting time penalties.  (Harris Decl. ¶18.)

18   **V.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS.**

19         The parties seek conditional certification of the "Settlement Class" defined as "[a]ll natural

20   persons who were employed by Defendant KeyPoint Government Solutions, Inc. in California as a non-

21   exempt Investigator during the period of time beginning June 1, 2009 through December 31, 2012."

22   (hereinafter "Class Member" or "Settlement Class").  (Harris Decl., ¶24.)

23          There is authority to the effect that a pre-certification settlement is subject to a somewhat higher

24   level of scrutiny than one negotiated post-certification.  See, e.g., Dunleavy v. Nadler, 213 F.3d 454, 458

25   (9th Cir. 2000).  Concerns about the rights of absent class members are dispelled by a careful fairness

26   review of the settlement by the trial court and by the procedural protections provided by Rule 23.

27   Officers for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459 U.S.

28   1217 (1983).  Class actions are favored, and Rule 23 is to be given a broad, rather than a restrictive,

1  interpretation in order to favor maintaining class actions. Labbate-D'Alauro v. GC Servs. Ltd. P'ship,

2  168 F.R.D. 451, 454 (E.D.N.Y. 1996). Rule 23 contains four requirements that must be satisfied: (1)

3  The class must be so numerous "that joinder of all members is impracticable," (2) there must be

4  "questions of law or fact common to the class," (3) the claims of the representative plaintiffs must be

5  "typical of the claims of the class," and (4) the class representatives must show that they "will fairly and

6  adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

7  **A. Numerosity.**

8  To meet the Rule 23(a)(1) numerosity requirement, the class must be "so numerous that joinder

9  of all members is impracticable." Here, the numerosity requirement is met. The approximate number of

10  employees within the Settlement Class is 118. (Harris Decl. ¶27.) Because it would be impracticable to

11  join all of these persons as plaintiffs in one lawsuit, the class' membership is sufficiently numerous to

12  meet the requirements of Rule 23(a)(1)

13  **B. Commonality.**

14  To meet the Rule 23(a)(2) commonality requirement, there must be "questions of law or fact

15  common to the class." A question is considered common if it susceptible to a common answer. Wal-

16  Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). This requirement is construed "permissively"

17  and "the existence of shared legal issues with divergent factual predicates will suffice." Hanlon v.

18  Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 2003). In this regard, if there is *one* issue whose

19  resolution will affect all or a significant number of Class Members, then commonality exists.

20  Lightbourn v. County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997). Here, common questions of fact

21  and law predominate over issues that affect only individual Class Members (for example, the individual

22  amounts owing to each Class Member on account of missed breaks or the failure to maintain adequate

23  timekeeping payroll records). Moreover, even if it should turn out that the class definition includes

24  Class Members who have not been injured or who do not wish to pursue claims against Defendant, that

25  is not a bar to certification. Elliott v. ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill. 1992). As explained

26  below, the class meets this requirement.

27  Here, Class Members share common questions of law and fact, which include, but are not limited

28  to: (1) whether Defendant had compliant corporate policies and procedures as it relates to the payment of

minimum wages and overtime wages to California Investigators for all hours worked, including hours in excess of eight in a day and/or forty in a week; (2) whether Defendant's policies and practices failed to provide California Investigators with 10-minute breaks for every 4 hours worked and 30-minute lunch breaks that began within the first five hours of the work day, (3) whether California Investigators' paystubs included all of the information required by California law, (4) whether Defendant's time recording policy violated California law by failing to record the specific times California Investigators started and ended their work day and meal breaks; (5) whether California Investigators who are no longer employed by Defendant failed to receive all earned wages owed to them upon the termination of their employment, and (6) whether Defendant is liable to Class Members for statutory and civil penalties. (Harris Decl. ¶26.)

Because these questions are susceptible to common answers, they meet the commonality requirement of Rule 23(a)(2).

### C. Typicality.

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." This refers to the nature of the representative's claim, "and not to the specific facts from which it arose." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). As such, it is "not necessary that all class members suffer the same injury." Lozano v. AT&T Wireless, 504 F.3d 718, 734 (9th Cir. 2007). Rather, the test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. Thus, there will be typicality where a lawsuit is based on conduct which is not unique to Plaintiff, but on a course of conduct that is common to all class members. See, e.g., Murray v. GMAC Mortgage Corp., 2007 WL 1100608, at *5 (N.D. Ill. 2007) (finding typicality where, despite minor factual discrepancies, all class members had "the same essential characteristics"); In re Activision Sec. Litig., 621 F.Supp. 415, 428 (N.D. Cal. 1985) (noting that "the only material variation among class members is the amount of damages to which each member is entitled" and "[s]uch differences are insufficient to defeat class certification").

Plaintiff is typical of the class. (Harris Decl. ¶26.)  Like other class members, Plaintiff was an Investigator for Defendant in the State of California.  Plaintiff and Class Members allegedly were not provided adequate minimum wage or overtime compensation on account of the "off-the-clock" work they performed, they allegedly were not properly provided their required rest and meal periods, they allegedly did not receive adequate wage statements, Defendant allegedly failed to maintain accurate time recording payroll records for Plaintiff and Class Members and, to the extent their employment with Defendant terminated, Plaintiff and Class Member allegedly did not receive all wages due to them upon termination.  (Id.)  Consequently, Plaintiff and Class Members share the same claims, to which Defendant could potentially assert the same defenses.  Therefore, Plaintiff is typical of the class.

### D.  Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether he and his counsel will "prosecute the action vigorously on behalf of the class." Hanlon, supra, 150 F.3d at 1020.  Here Plaintiff and his counsel have devoted considerable time and effort to advancing the interests of the class, they have no known conflicts of interest with absent class members, and Plaintiff has retained experienced counsel to litigate his claims on a common basis.  (Harris Decl., ¶¶ 63-66, 69.)  Therefore, Plaintiff meets the Rule 23(a)(4) adequacy requirement.

### E.  This Case Also Satisfies the Requirements of Rule 23(b)(3).

In addition to Rule 23(a) prerequisites, class certification requires the moving party to show that one or more of the requirements of Rule 23(b) are met.  Here, as explained below, the class meets the requirements of Rule 23(b)(3) in that class members share common questions that predominate over any questions unique to individual class members and class action treatment is the superior means of resolving this dispute.

#### i.  Predominance of Common Questions.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." Culinary/Bartender Trust Fund, supra, 244 F.3d at 1162.  This inquiry is based on "the notion that the adjudication of common issues will help achieve judicial economy. E.g.,

Zinser v. Accufix Research Institute, Inc., 253 F.3d 1188, 1189 (9th Cir. 2001).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  It is well settled that the need for determining differing amounts of damages suffered by class members does not preclude class certification.  See, e.g., Leyva v. Medline Industries, Inc., 2013 WL 2306567 (9th Cir. 2013).  Class members share predominant common questions under these standards.  Indeed, the core questions in this case concern the legality of policies and practices with respect to timekeeping, payment of overtime, meal and rest periods and wage statements that Defendant applies to all Class Members. (Harris Decl. ¶ 26.)  Because resolving the legality of Defendant's policies and practices presents a highly significant aspect of this case from a liability perspective, the Rule 23(b)(3) predominance requirement is met.  (Id.)

### ii.   Superiority of Class Action.

To determine whether the superiority requirement of Rule 23(b)(3) is met, this Court must compare the class action vehicle with alternative methods for adjudicating the claims at issue.  The absence of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.  Accordingly, where "a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." Culinary/Bartender Trust Fund, supra, 244 F.3d at 1163; see also Valentino v. Carter-Wallace, 97 F.3d 1227, 1235–36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").  As set forth in more detail below, most class members stand to recover damages in relatively small amounts. Accordingly, as in Culinary/Bartender Trust Fund, "this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" 244 F.3d at 1163 (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985)).

A consideration of the factors listed in Rule 23(b)(3) only bolsters this conclusion. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. When assessing these issues of predominance and superiority, the court may consider that the class will be certified for settlement purposes only. <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 618–20 (1997). A showing of manageability of trial is not required in that context. <u>Id</u>. Rather, the test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>See Id</u>. at 623; Fed. R. Civ. P. 23(b)(3)(D).

The class easily meets this requirement. In deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems." <u>Amchem Prods,. Inc.</u>, 521 U.S. at 620. In addition, the remaining factors set forth in Rule 23(b)(3)(A)–(C) all favor the grant of class certification. Class members have no particular interest in individually controlling the prosecution of separate actions and any class member who wants to pursue a claim for an amount greater than what is proposed can opt out of the Settlement. (Harris Decl. Ex. 3.) Finally, "[w]ith the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." <u>Elkins v. Equitable Life Ins. of Ia.</u>, 1998 WL 133747, at *19 (M.D. Fla. 1998); <u>Struhe v. Amer. Equity Inv. Life Ins. Co.</u>, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (final two Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement"). Thus, the conclusion is inescapable that a class action is the superior means of resolution for this case.

## VI.   SUMMARY OF THE PROPOSED SETTLEMENT.

### A.   THE SETTLEMENT AND THE PAYMENT OF CLAIMS.

In accordance with the Amendment, the Net Distribution Amount shall be computed by deducting all of the following from the non-reversionary $240,000 Total Settlement Amount: (1) up to thirty percent (30% or $72,000) in attorneys' fees to Class Counsel, subject to approval by the Court, (2) reasonable attorneys' costs and expenses actually incurred of up to $15,000, subject to approval by the Court, (3) up to $7,500 enhancement award to Plaintiff, subject to approval by the Court, (4) the reasonable costs of the Claims Administrator to administer the Settlement, which shall not exceed $12,000 (Harris Decl., ¶45, Ex. 5), and (5) $5,000 to the State of California Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys' General Act ("PAGA"). (Harris

Decl., ¶¶ 36-37.)   If the maximum amounts set forth above are awarded by the Court, the Net

Distribution Amount that will be made available to the Class Members is $129,750  ($240,000 - $12,000

- $3,750 - $7,500 - $72,000 - $15,000 = $129,750).   Thereafter, deducted from this amount are the

proposed payments to former employees in consideration of waiting time penalties.  (Harris Decl. ¶ 37.)

Under the terms of the Amendment, the parties propose to pay each former Class Member who submits

a valid Claim Form $250 for their California Labor Code sections 203 waiting time penalties.  (Harris

Decl., Ex. 3, ¶ 4.3).  There are 43 former employees in the Settlement Class.  (Harris Decl., ¶ 37).  Thus,

the Net Distribution Amount will be further reduced by a maximum of $10,750 (43 x $250 = $10,750),

if all former Class Members submit valid Claim Forms.  (Id.)  Thus, after deducting the maximum

potential universe of waiting time penalties, there will remain at least $119,000 available for distribution

to the 118 Settlement Class Members, or an average minimum net payment of $1,008.47 if every Class

Member participates in the settlement ($119,000 / 118 = $1,008.47).  (Id.)  These funds that remain in

the Net Distribution Amount will be distributed to the Class Members pro-rata based on their total

individual regular, overtime and double time earnings during the Covered Time Frame in proportion to

the total earnings of the Settlement Class.  (Id.)   Obviously, however, every Class Member will not

participate in the Settlement.  As a result, any unclaimed funds remaining in the Total Settlement

Amount after all of the claims and other items (*i.e.* costs, attorneys' fees, enhancement award, and

PAGA penalties) have been paid will be redistributed to the Class Members who submitted valid Claim

Forms based on each Claim Member's above-referenced pro-rata share.  (Id.)  No funds will revert to the

Defendant.  Thus, assuming at 2/3 response rate -- which is a very positive response rate -- all Class

Members who submit valid Claim Forms would then receive an average minimum net payment of

approximately $1,642.  (Id.)

For purposes of the Settlement, KeyPoint will provide the Settlement Administrator with the list

of 118 California Investigators that worked during the period of June 1, 2009 through December 31,

2012, as well as each individual's total regular, overtime and double time earnings.  (Harris Decl. ¶ 38).

The Claims Administrator will first identify the 43 former employees who are entitled to receive a $250

payment in consideration of their waiting time penalties.  (Id.)  The Claims Administrator will then

calculate each individual's pro-rata share of the remaining $119,000 Net Distribution Amount, which

will based on the individual's total regular, overtime and double-time earnings in proportion to the total earnings of the Settlement Class.  (Id.)  Both the individual's total earnings during the applicable class period as well as their corresponding minimum settlement payment will be set forth on each individual's customized Claim Form.  (Id.)  Thus, Class Members can evaluate the proposed Settlement and know the approximate minimum amount to which they would be entitled to receive if they choose to submit a Claim Form and opt in to the Settlement.  (Id.)  To the extent the Court awards less than the requested amounts for attorneys' fees, costs, enhancement award and/or claims administration fees, or all of the Settlement Class Members do not return valid Claim Forms, the balance will revert to the participating Class Members and be distributed based on their pro-rata earnings.  (Id.)  Thus, the amount that is listed on each Class Member's Claim Form is the *minimum* amount they would receive under the terms of the Settlement.  (Id.)

### B.    TAX IMPLICATIONS.

As explained in the Settlement, the Parties agree that fifty percent (50%) of all payments to Class Members will be treated as wages subject to W-2 reporting.  (Harris Decl., Ex. 1, ¶4.4.)  Therefore, normal payroll taxes and withholdings will be deducted pursuant to state and federal law, and all required payroll contributions will be made on these amounts.  Fifty percent (50%) of the payments will be treated as prejudgment interest and statutory non-wage payments on which there will be no tax withholding and for which an IRS Form 1099 shall be issued if the payment is above the minimum threshold required for the issuance of a Form 1099.  (Id.)

### C.    PLAINTIFF'S ENHANCEMENT AWARD.

Mr. Lounibos continues to assist counsels' work on this case and a declaration with respect to the services he has performed has been filed concurrently with the instant motion.  The Settlement provides for payment to Mr. Lounibos of an enhancement award on account of the services that he has rendered as Class Representative.  See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) ("Incentive *awards* are fairly typical in class action cases.  Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.") (emphasis in original) (internal citations omitted).

Plaintiff's enhancement award is entirely at the discretion of this Court, a fact that is referenced in the proposed Notice to Class Members.

Plaintiff is entitled to an additional amount for the services he has rendered as a Class Representative.  Enhancement awards "are not uncommon and can serve an important function in promoting class action settlements," Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. 2002), and "[c]ourts routinely approve incentive awards to compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  In re S. Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), reversed on other grounds, 191 F.3d 453 (6th Cir. 1999).  See also Staton v. Boeing Co., 327 F.3d 938, 100 (9th Cir. 2001) ("The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the [p]laintiffs have taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . [and] the amount of time and effort the Plaintiffs expended in pursuing the litigation.'") (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1997)).

The decision whether to award an enhancement award to a class representative, and the size of that award, is entirely within the trial court's discretion.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458, 462 (9th Cir. 2000).  "The criteria courts may consider in determining whether to make an enhancement award include:  (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  Van Vraken v. Atl. Richfield Co., 901 F. Supp. 294, 299–300 (S.D. Cal. 1995) (approving an award of $50,000 to a named plaintiff who did not receive a great personal benefit from the common fund).

The purposes for which courts award incentive payments are threefold.  First, service awards compensate class representatives for work done by them on behalf of the class under a quantum meruit theory.  See Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 251 (S.D. Ohio 1991).  This is the same reason attorneys' fees, expert fees, and other costs of litigation are generally deducted from the total settlement amount – to prevent a windfall to the class.  Second, service

1 awards are used to compensate class representatives for risks undertaken by them in bringing the class

2 action.  See, E.g., In re Continental Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992).  These risks

3 include retaliation resulting in personal or financial harm, discrimination, trouble finding employment,

4 and significant financial risk.  See, e.g., Cook, 142 F.3d at 1016 (workplace retaliation); Allapattah

5 Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1220–21 (S.D. Fla. 2006) (financial retaliation);

6 Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co., 76 F.R.D. 173, 181 (S.D.N.Y.

7 1977) (discrimination): Glass v. UBS Fin. Servs., Inc., 2007 WL 221862 at *16 (N.D. Cal. Jan. 26,

8 2007) (trouble finding employment); Enterprise Energy Corp., 137 F.R.D. at 251 (significant financial

9 risk).  Third, some courts award service awards to class representatives in recognition of their

10 willingness to act as a private attorney general.  See, e.g., Re Continental/Midlantic S'holders Litig.,

11 1987 WL 16678 at *7 (E.D. Pa. Aug. 29, 1987).

12      In light of Plaintiff's willingness to come forward with this action on behalf of Defendant's

13 employees, an enhancement award of up to $7,500 is reasonable.  See, e.g., Cook, 142 F.3d at 1016

14 (approving an incentive award of $25,000 to a class representative); Bradburn Parent Teacher Store, Inc.

15 v. 3M (Minn. Mining and Mfg. Co.), 2007 WL 1468847 at *19 (E.D. Pa. May 14, 2007) (award of

16 $75,000 in case with $39,750,000 settlement); Glass, 2007 WL 221862 at *17 (award of $25,000 to each

17 of four class representatives from settlement of $45,000,000); Bogosian v. Gulf Oil Corp., 621 F. Supp.

18 27, 28 (E.D. Pa. 1985) (approving an incentive award of $20,000 apiece to two class representatives).

19      In furtherance of this action, Plaintiff also has expended much time with counsel, having

20 searched for and provided counsel with extensive documentation, explained the documentation and

21 information, had his deposition taken, and participated in an all day mediation at JAMS in San

22 Francisco.  (See Declaration of Donald Lounibos In Support of Renewed Motion for Preliminary

23 Approval ("Lounibos Decl."), ¶¶ 2-11.)  Additionally, Plaintiff has met with counsel by telephone and/or

24 in person on numerous occasions.  (Id.)  At final approval, this Court may decide to award a reasonable

25 enhancement award, not to exceed $7,500.

26     **D.  RELEASE OF CLAIMS**.

27      Under to the proposed Settlement, the release has been narrowly crafted to address only matters

28 properly resolved in this case. (Harris Decl., Ex. 2, ¶ 5.1; Ex. 1 ¶ 5.2 – 5.3.)  In particular, the release

states the following:[1]

      5.1    Upon the final approval of the Settlement by the Court, and except as to such rights or claims as may be created by this Agreement, each member of the Settlement Class (other than opt-outs), regardless of whether he or she has timely submitted a Claim Form, will fully and forever release and discharge KEYPOINT, including its former and present parent companies, subsidiaries, divisions, concepts, related or affiliated companies, shareholders, officers, directors, employees, partners, agents, representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be jointly liable with any of the foregoing ("Released Parties") from any claims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or unknown, suspected or unsuspected, arising from: (1) the Action and any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business and Professions Code, claims under PAGA, claims for restitution and other equitable relief, liquidated damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, other compensation or benefits; and (2) any alleged wage and hour violations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, contract, tort or other theory of liability under state or local law, by any Class Member against the Released Parties (collectively, the "Released Claims"). In addition, any Class Member who timely Submits a Claim Form will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other.  To the extent a Class Member does not submit a Claim Form or does not opt out of the settlement, any such Class Member will not release any claims under the FLSA.  Only Class Members who submit a valid Claim Form will release

---

[1]  This Court was previously concerned that the release provision in paragraph 5.1 of the Original Settlement failed to specifically state that any claims released by Class Members who do not opt out do not include claims under the Fair Labor Standards Act.  *See* July 12th Order, 9:28-10:17.  In order to address the Court's concern, the parties modified paragraph 5.1 in the Amendment to additionally state, "[t]o the extent a Class Member does not submit a Claim Form or does not opt out of the settlement, any such Class Member will not release any claims under the FLSA.  Only Class Members who submit a valid Claim Form will release any claims under the FLSA." (Harris Decl., Ex. 2, Amendment, ¶ 5.1.)

their claims under the FLSA.

5.2    The releases described above will cover all remedies that have been or could be claimed for the wage and hour causes of action described in the Action including but not limited to, statutory, constitutional, contractual and common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief.  The release will cover all statutory violations that could be claimed for the causes of action described in the Action including but not limited to, the federal Fair Labor Standards Act (for those Class Members who submit claims), the California Labor Code Sections 96 through 98.2 *et seq.*, the California Payment of Wages Law, and in particular, California Labor Code §§200 *et seq.*, including California Labor Code §§200 through 243, and §§203 and 218 and 218.5 in particular, California Labor Code §§300 *et seq.*; California Labor Code §§400 *et seq.*; California Working Hours Law, California Labor Code §§500 *et seq.*, California Labor Code §1194; the California Unfair Competition Act, and in particular, California Business & Professions Code §§17200 *et seq.*; the PAG Act, codified at California Labor Code §§2698 through 2699; California Code of Civil Procedure §1021.5; and any other provision of the California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, in all of their iterations.  Nothing in this paragraph is intended to extend the scope of the release applicable to the Settlement Class Members as described in Paragraph 5.1.

5.3    The release of claims provided by this Agreement includes claims that are described in the Action but that a Settlement Class Member does not know or suspect to exist in his or her favor against the Released Parties as of the date of preliminary approval of this settlement by the Court. Each Settlement Class Member who does not opt-out, including the Class Representative, waives all rights and benefits afforded by Section 1542 of the California Civil Code as to unknown claims and does so understanding the significance of that waiver.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Nothing in this paragraph is intended to extend the scope of the release applicable to the Settlement Class Members as described in Paragraph 5.1

(Harris Decl., Ex. 2, ¶ 5.1; Ex. 1 ¶ 5.2 – 5.3.)

E.    **EXCLUSIONS (OPT-OUTS) AND OBJECTIONS.**

As the Settlement makes clear, Class Members will be given an opportunity to exclude

themselves from the Settlement, as well as an opportunity to object to the Settlement.  (Harris Decl., Ex. 1, ¶¶ 6.6 – 6.8.)  The Notice provides instructions concerning exclusions and objections.  (Harris Decl., Ex. 3, ¶¶ 10-12; 15-16).  Class Members who wish to object to the Settlement must file a written objection within thirty (30) calendar days from the date the Claims Forms were mailed.  (Harris Decl., Ex. 1, ¶6.7.)  Class Member will have sixty (60) calendar days from the date the Notice and Claim Forms are mailed to submit the completed Claim Form or request exclusion.  (Harris Decl., Ex. 1, ¶6.6.)

### F.    PAGA PAYMENT TO THE LWDA.

The Settlement provides for a PAGA payment of $5,000 to the LWDA in settlement of any alleged civil penalties owing to the named Plaintiff, the members of the Settlement Class, and the State of California under PAGA (California Labor Code section 2698 *et seq.*).  (Harris Decl., Ex. 1, ¶4.5.)  Civil penalties recovered as part of a proposed settlement shall be approved by the Court.  See Cal. Lab. Code § 2699(l) ("The superior court shall review and approve any penalties sought as part of a proposed settlement agreement pursuant to this part.").  Plaintiff contends that a $5,000 PAGA payment is fair and adequate.  Additionally, settlement checks to participating Class Members not negotiated within 180 days from their issue date shall be considered null and void and such funds resulting from the failure of a participating Class Member to timely cash his or her settlement check shall be paid to The National Veterans Legal Services Program.  (Harris Decl., Ex. 1, ¶ 7.5.)

### VII.    CLASS-NOTICE PROCEDURE.

The proposed Notice will satisfy all applicable requirements, including due process.  (Harris Decl., ¶¶ 50-55; Ex. 1, ¶¶ 6.1 – 6.13; Ex. 3.)  Within fourteen days of the Court's granting of preliminary approval of the Settlement, Defendant will provide the Claims Administrator with the names and last-known addresses of the Settlement Class Members ("Class List"), as well as other relevant information, including the total individual regular, overtime and double time earnings for all 118 Class Members during the Covered Time Frame.  The Claims Administrator will analyze the Class List using the National Change of Address database to search for updated addresses before mailing the Notice and Claim Form (Harris Decl., Exs. 3 and 4), which will be mailed to Class Members no later than 28 days after the Court's granting of preliminary approval.  The Notice and Claim Form that will be mailed to Class Members includes detailed information regarding the terms and the procedures set forth in the

Settlement, as well as information Class Members need in order to evaluate what they will receive under the terms of the Settlement. Additionally, the Notice lists a website were the Settlement and all relevant pleadings and orders will be available for review by the Class Members. All Class Members who do not return a Claim Form within the first thirty days will receive a postcard from the Claims Administrator, reminding each such Class Member to submit a Claim Form before the deadline. The Claims Administrator will perform a National Change of Address search at the outset. If any Notice is returned to the Claims Administrator as undelivered before the deadline for Class Members to submit Claim Forms expires, the Claims Administrator will forward the Notice using all standard skip tracing devices to obtain forwarding addresses. Any undelivered Notice and Claim Form will be re-sent within five days after the Claims Administrator receives notice that the Notice and Claim Form was undeliverable. The Claims Period shall be sixty days. The parties contend that the proposed notice will satisfy all applicable due process requirements.[2]

## VIII.  ATTORNEYS' FEES AND COSTS.

Pursuant to the terms of the Settlement Agreement, Class Counsel intends on applying for an award of attorney's fees, which request will not to exceed 30% of the Total Settlement Amount, (*i.e.*, $72,000), as well as an award of costs, which request will not exceed $15,000. (Harris Decl. Ex. 2, ¶ 4.7.) Principles of equity permit fees and costs to come from the fund as a whole. See, e.g., Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (explaining that the "common-fund" doctrine "allows a court to . . . assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.").

Although the requested 30% exceeds the 25% "benchmark" for common-fund cases, *see, e.g.*, Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (stating that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"), it is warranted in this case on account of the time spent litigating

---

[2]   Additionally, in response to a stated concern of this Court, the parties agreed by way of the Amendment that, "[t]o the extent any re-mailed notices once again get returned to the Claims Administrator as undeliverable by the post office, the Claims Administrator will compile a list of all such Class Members, provide the list to all counsel and the Court prior to the hearing on the motion for final approval, and those Class Members' claims will not be released as set forth in section five of this Agreement." (Harris Decl., Ex. 2, ¶ 6.4.)

this case and on account of the substantial payments participating Class Members will receive.  See, e.g., Singer v. Becton Dickinson & Co., 2010 WL 2196104 at *8–9 (S.D. Cal. filed June 1, 2010) (departing from the benchmark and awarding fees equal to 33.33% of the settlement fund when class members would recover "110% of the claimed losses").  Moreover, when compared to other settlements of comparable size, the 30% request is within the range of reasonableness.  See, e.g., Craft v. County of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (explaining that "25% is substantially below the average class fund fee nationally" and that "[c]ases of under $10 [m]illion will often result in fees above 25%"); Cicero v. DirecTV, Inc., 2010 WL 2991486 at *6 (C.D. Cal. filed July 27, 2010) (explaining that "case law surveys suggest that . . . 30–50% [is] commonly awarded in case[s] in which the common fund is relatively small").  In any event, the Settlement Class will be given an opportunity to object to Class Counsel's requested fees, and the Court will have an opportunity to address the fee award after Class Counsel have filed the necessary motion.  Accordingly, compensation for Class Counsel will be left entirely to the determination of the Court.

## IX.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

"The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(c).  According to the Ninth Circuit:

> Assessing a settlement proposal requires a district court to balance a number of factors: the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

Dunleavy, 2132 F.3d at 458 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Of course, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  Hanlon, 150 F.3d at 1026.  However, certain factors may predominate in different factual contexts.  Indeed, one factor may predominate over *all* the others and provide sufficient grounds for approval of a settlement.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

A.    THE TERMS OF THE PROPOSED SETTLEMENT ARE FAIR.

Settlement is an extremely attractive option for Plaintiff and Defendant, given the reasonable arguments that can be made by both sides.  (Harris Decl., ¶ 58.)  In other words, litigation is always uncertain, and Plaintiff could lose at trial just as easily as he could prevail.  Plaintiff contends that Defendant violated the California Labor Code by failing to provide Class Members with proper and timely minimum wage and overtime wages.  Plaintiff's basis for the minimum wage and overtime claim is that Plaintiff and Class Members worked "off-the-clock" hours for which they were not compensated.  Further, Plaintiff contends that the ten-minute paid rest periods and thirty-minute unpaid meal breaks mandated by sections 226.7 and 512 of the California Labor Code and the IWC Wage Order No. 4 were not always provided to Plaintiff and Class Members.  Accordingly, Plaintiff contends that Defendant's employees are entitled to "one additional hour of pay at [their] regular rate of compensation for each work day that [a] meal or rest period [w]as not provided."  Cal. Lab. Code § 226.7(b).  In addition, Plaintiff contends that Defendant willfully failed to pay in a timely fashion all wages due to those Class Members whose employment with Defendant had been terminated.  Accordingly, Plaintiff contends that those employees are entitled to the continuing wages specified by section 203 of the California Labor Code.  Plaintiff also contends that Defendant failed to issue pay stubs that contain all of the information required by the California Labor Code.  Finally, Plaintiff contends that Defendant failed to maintain accurate payroll timekeeping records in accordance the section 1174 and IWC Wage Order 4.  Defendant vigorously disputes all of Plaintiff's contentions.

Settlement is an attractive option with respect to Plaintiff's unpaid minimum wage/overtime claim and meal-and-rest break claim.  Based on a review of information produced by Defendant and on discussions with Defendant's counsel, Plaintiff's counsel acknowledges that some may argue that the amount of unpaid overtime and/or number of breaks missed by any given Class Member may require a rather individualized inquiry, with a result that class certification might be denied on the unpaid-overtime claim and/or meal-and-rest-break claim.  This is especially so in light of the challenges Plaintiff would face in demonstrating "off-the-clock" work that was allegedly performed but not paid to Plaintiff and Class Members.  Settlement is also an attractive option with respect to Plaintiff's continuing-wages claim.  The California Labor Code requires that an employer pay continuing wages only if its failure to

pay all wages upon termination was willful.  See Cal. Lab. Code § 203.  It is far from settled whether the failure to pay off-the-clock overtime wages or wages on account of foregone meal and rest breaks results in continuing-wages liability.  See Hon. Ming W. Chin, et al., California Practice Guide:  Employment Litigation ¶ 11:1464.1 (The Rutter Group 2008)  ("Employers may argue that because 'wages' and overtime pay have different sources, Lab. Code § 203's waiting time penalties for 'wages' do *not* apply to overtime pay  [See Earley v. Sup. Ct. (Washington Mut. Bank, F.A.) (2000) 79 Cal. A4th 1420, 1430, 95 CR2d 57, 63—'An employee's right to wages and overtime compensation clearly have different sources'; see also Wilcox v. Birtwhistle (1999) 21 C4th 973, 979, 90 CR2d 260, 264—words and phrases given a particular meaning in one part of a statute must be given same meaning in other parts of the statute; Mamika v. Barca (1998) 68 CA4th 487, 493, 80 CR2d 175, 178—penalty of continued 'wages' for late payment is computed by reference to daily straight-time pay (not overtime)].") (emphasis in original). Cf. Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7 (1981) (explaining that liability under section 203 is improper where an employer had deducted a setoff from an employee's final paycheck at a time when the law governing the propriety of setoffs from employees' paychecks was unclear.)  Insofar as it does not result in continuing-wages liability, the extent of Defendant's liability may be reduced significantly.

     In summary, there are significant risks that continued litigation would entail that make the compromise amount fair, adequate, and reasonable.  These risks include, but are not limited to: (i) the risk that the Court might conclude, outside the context of a settlement class, that individual questions predominate over common questions as to liability and/or damages issues; (ii) the risk that potential differences between the locations where Class Members worked could cause class certification to be denied and/or narrow the scope of any certified class; (iii) the risk that Defendant could establish that it had compliant meal and rest break practices, as well as compliant policies regarding the payment of all hours worked, (iv) the risk that Defendant's compliant written meal and rest period policy could significantly limit the scope of its liability exposure for alleged break violations; (v) the risk that good faith disputes as to the viability of the underlying wage claims in this case could preclude any penalty awards under California Labor Code §§ 203 and 226(e); and (vi) the risk that Defendant's alleged violation of California's timekeeping policy does not allow Class Members to recover statutory

1  damages.  While these risks are far from exhaustive, their magnitude shows that the Settlement is a fair,

2  adequate, and reasonable compromise in view of them.

3       Of significant importance when evaluating this proposed settlement is the Ninth Circuit opinion

4  in Rodriguez v. West Publishing Corp., 563 F. 3d 948 (9th Cir. 2009), which establishes that class

5  settlements of this nature should focus on the recovery of *actual losses* rather than recovery of *penalties*

6  (such as Plaintiff's claims under sections 203 and 226 of the Labor Code).[3]  Viewed in that light, and

7  assessing the general amount that shall be recovered by each Class Member, the Settlement is entirely

8  reasonable and favorable.

9       **B.     LIKELY DURATION OF FURTHER LITIGATION.**

10       Class Counsel are also of the opinion that the Settlement represents an excellent bargain for the

11  class, given the inherent risks, hazards, and expenses of carrying the case through trial. As the Central

12  District has explained, this weighs strongly in favor of approving the settlement. See Rodriguez v. West

13  Publ'g Corp., 2007 WL 2827379 at *9 (C.D. Cal. 2007) (explaining that "the trial court is entitled to,

14  and should, rely upon the judgment of experienced counsel for the parties").  Thus, in light of these

15  considerable risks, Plaintiffs have achieved a fair settlement that reflects a meaningful recovery on

16  behalf of class members that merits this Court's preliminary approval. See In re Cendant Corp.,

17  Derivative Action Litig., 232 F.Supp.2d 327 (D. N.J. 2002) (approving settlement that only provided a

18  2% recovery based on the estimated liability exposure).

19  _____

20  [3] It is submitted that the decision in Rodriguez, an antitrust class-action lawsuit, supports the
granting of preliminary approval in this case.  In Rodriguez, as here, most of the potential damages were

21  funds that are theoretically recoverable as penalties: in Rodriguez, threefold "treble damages,"
Rodriguez, 563 F. 3d at 964 (citing 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his

22  business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the
damages by him sustained . . . ."); here, penalties for violations of the California Labor Code.  Rodriguez

23  teaches that, in considering whether to approve an antitrust class-action settlement, a court can conclude
that the settlement is "reasonable even though it evaluate[s] the monetary potion of the settlement *based*

24  *only on an estimate of single damages* [rather than treble damages]." Id. at 955.  See also id. at 964–66
("This circuit has long deferred to the private consensual decision of the parties.  See Hanlon, 150 F.3d

25  1027.  Experienced counsel such as those representing all the parties in this case will certainly be aware
of exposure to treble damages in an antitrust action.").  Similarly, here, the Court may consider the

26  Settlement based only on an estimate of the actual damages, putting the penalty aspects of the case to the
side in the process.  Given the uncertainty and the risks faced by the parties to the litigation, it is

27  reasonable for this Court to give preliminary approval of the settlement.  Rodriguez was recently
followed in Medearis v. Oregon Teamster Employers Trust, 2009 U.S. Dist. LEXIS 53453 (D. Or. filed

28  June 19, 2009).

Furthermore, while this action is pending, Defendant's California employees remain uncompensated for the alleged violations of state and federal labor law.  Granting approval of this class-action settlement would create a settlement that would remedy those violations.  However, because the putative Class has not been certified, the likely duration of further litigation would at least a couple more years, and possibly many years.  In light of the lengthy time necessary to litigate class actions, the payment through the Settlement has meaningful, immediate value to the Class Members.

C.    THE AMOUNT OFFERED IN THE SETTLEMENT.

With the proposed settlement, participating Class Members will look to receive a non-reversionary share of a settlement fund totaling $240,000, less the amount awarded to Class Counsel for fees and costs, administration costs, an enhancement award to the named Plaintiff, and payment to the LWDA pursuant to PAGA.  This non-reversionary $240,000 settlement fund is a substantial amount.  Under the Settlement, to the extent every single Class Member participated in the Settlement, the average gross recovery for each participating Class Member would be $2,034 ($240,000 / 118 = $2,033.89), or an average net recovery of approximately $1,100 ($129,750 / 118 = $1,100).  (Harris Decl. ¶37.)   In light of the fact that this is a non-reversionary settlement, and assuming at 2/3 (66%) response rate -- which is considered to be a very positive response rate -- all Class Members who submit valid Claim Forms would then receive an average minimum net payment of approximately $1,642 ($129,750 / 79 = $1,642.40).  Given the risks inherent in this case, as with all class actions, Plaintiff submits that that is an entirely reasonable amount for the settlement of this case.  (Harris Decl. ¶ 67.)  In most cases, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.  Nat'l Rural Telecomms. Coop v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Indeed, settlement is encouraged in class actions where possible.  Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.").

D.    THE EXTENT OF DISCOVERY COMPLETED AND STAGE OF THE PROCEEDINGS.

The parties have conducted extensive formal and informal discovery.  (Harris Decl., ¶¶ 19, 62.)  Defendant provided Plaintiff with documentation and information regarding the employment records of Plaintiff and a statistically significant sample of 25% of the Class Members, which was the basis of

1  Plaintiff's damage analysis for use during the mediation.  (Id.)  Indeed, the law makes clear that

2  exhaustive, protracted, and costly discovery need not be conducted in a class action before a settlement

3  can be reached.  7-Eleven Owners for Fair Franchising, 85 Cal. App. 4th 1135, 1150 (2000).  "In the

4  context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table'

5  where the parties have sufficient information to make an informed decision about settlement . . .

6  '[N]otwithstanding the status of discovery, Plaintiffs' negotiators had access to a plethora of information

7  regarding the facts of their case.'"  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239–40 (9th Cir.

8  1998) (citations omitted).  Here, there was sufficient investigation, depositions as well as formal and

9  informal discovery conducted to permit counsel to enter into the Settlement.  The investigation and

10  depositions, as well as the information and documentation provided by Defendant, allow counsel for

11  Plaintiff to conclude that this settlement is fair, reasonable and in the best interests of the Class

12  Members.  (Harris Decl. ¶67.)

13         E.    **EXPERIENCE AND VIEWS OF COUNSEL.**

14         In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should,

15  rely upon the judgment of experienced counsel for the parties.  The basis for such reliance is that

16  "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that

17  fairly reflects each party's expected outcome in the litigation."  In re Pacific Enters. Sec. Litig., 47 F.3d

18  373, 378 (9th Cir. 1995). Counsel for Plaintiff has substantial experience in prosecuting class actions,

19  including actions that involve the application of the California Labor Code.  (Harris Decl., ¶65.)  All

20  Class Counsel are of the opinion that the proposed Settlement represents a very reasonable bargain for

21  both sides, given the inherent risks, hazards, and expenses of carrying the case through trial.  (Harris

22  Decl. ¶67.)

23         F.    **REACTION OF CLASS MEMBERS TO THE PROPOSED SETTLEMENT.**

24         The reaction of Class Members to the proposed Settlement cannot be known until preliminary

25  approval is given, Notice is sent out, and responses to that notice are received.  That said, to date there is

26  no known opposition to the proposed Settlement.

27  **X.   CONCLUSION.**

28         It is respectfully submitted that the settlement is fair, reasonable, and adequate.  The Court

should grant preliminary approval of the Settlement, grant conditional certification of the Class, confirm the Class Counsel and Class Representative, appoint the Claims Administrator, approve the Notice and Claim Form, and set the matter for a final approval hearing, at which time the attorneys' fee, costs and enhancement award requests may be addressed.

Dated:  December 13, 2013                              NORTH BAY LAW GROUP

                                                      _____/s/_____
                                                      David S. Harris
                                                      *Attorneys for Plaintiff*