1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

DONALD LOUNIBOS,

        Plaintiff,

Case No.  12-cv-00636-JST

8

   v.

9

KEYPOINT GOVERNMENT SOLUTIONS INC,

10

        Defendant.

11

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; APPROVING NOTICE TO THE CLASS; SETTING DATES AND PROCEDURES FOR FINAL FAIRNESS HEARING**

Re: ECF No. 56

12

      In this putative wage-and-hour class action and collective action hybrid, the Court

13

previously denied a motion for preliminary approval of a class settlement without prejudice on the

14

grounds that it had obvious deficiencies, appeared to grant preferential treatment to segments of

15

the class, and did not appear to fall within the range of possible approval.  Plaintiff Lounibos has

16

renewed his motion for preliminary approval after revising some portions of the settlement

17

agreement.[1]  For the reasons set for below, the motion is GRANTED.

18

**I.**    **BACKGROUND**

19

    **A.**    **Lounibos' Claims**

20

      Defendant Keypoint Government Solutions provides investigative and risk-mitigation

21

services to government organizations.  Compl. ¶ 3, ECF No. 1.  Plaintiff Donald Lounibos was

22

employed by Keypoint as an investigator from September 2009 to October 2011.  Id. ¶ 5.  In the

23

course of his employment, Lounibos conducted background investigations on potential

24

government employees and prepared reports for Keypoint after the conclusion of his

25

investigations.  Id.  Keypoint assigned work to Lounibos "via a secure computer" and gave him

26

strict deadlines by which he had to complete each investigation and report.  Id. ¶ 6.  Though

27

28

---

[1] Defendant Keypoint filed a statement of non-opposition. ECF No. 61.

1    Lounibos frequently was unable to complete his assigned tasks within an eight-hour work day, the

2    computer system through which Lounibos had to report his work hours did not allow him to enter

3    time in excess of eight hours for any given day.  Id.

4        In the complaint, which he filed on February 9, 2012, Lounibos alleges that Keypoint

5    violated various state and federal labor laws by failing (1) to pay him minimum and overtime

6    wages; (2) to provide him rest breaks, meal breaks, pay statements, and copies of signed personnel

7    documents; and (3) to maintain accurate payroll records.

8        Lounibos seeks to represent a class composed of "all individuals who were employed in a

9    Covered Position during the Covered Time Frame." Harris Decl., Ex. 1 ¶ 1.11.  Covered Positions

10   are defined as "all natural persons who were employed by Defendant in California as a non-

11   exempt Investigator." Id., Ex. 2 ¶ 1.7.  The Covered Time Frame is defined as "the period of time

12   beginning June 1, 2009 through December 31, 2012." Id. ¶ 1.6.

13       Lounibos asserts the following nine claims on behalf of himself and the putative class

14   members: (1) failure to pay minimum wages and overtime compensation in violation of California

15   Labor Code sections 510, 1194, 1198 and Industrial Welfare Commission ("IWC") Wage Order 4;

16   (2) continuing wages as a penalty under California Labor Code sections 201 to 203; (3) failure to

17   provide accurate itemized wage statements in violation of California Labor Code section 226;  (4)

18   failure to maintain accurate payroll records in violation of California Labor Code section 1174 and

19   IWC Wage Order 4; (5) failure to provide adequate rest periods in violation of California Labor

20   Code section 226.7 and IWC Wage Order 4; (6) failure to provide adequate meal periods in

21   violation of California Labor Code section 226.7 and IWC Wage Order 4; (7) failure to pay

22   minimum or overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

23   216(b); (8) failure to provide signed documents in violation of California Labor Code section

24   226(f); and (9) violations of California's Business and Professions Code section 17200.

25       In the complaint, Lounibos seeks unpaid wages and penalties for himself and the putative

26   class members and the issuance of an injunction barring Keypoint from further violating the state

27   and federal labor laws at issue in this action.

28

United States District Court
Northern District of California

2

United States District Court
Northern District of California

## B.     Revised Settlement Agreement

The parties participated in a mediation conducted by The Honorable David A. Garcia of JAMS on November 2, 2012.  Harris Decl. ¶ 20.  Before the mediation, the parties exchanged "informal discovery," which included complete hourly employee payroll data for 25% of the putative class; Keypoint's policies, handbooks, and training materials; and other relevant documents.  Id. ¶ 19.  Lounibos' counsel interviewed numerous witnesses and took the deposition of Keypoint's Chief Personnel Officer and Keypoint's Field Manager, who was responsible for the implementation of Keypoint's policies and practices with respect to Lounibos and "more than one-half of the putative class."  Id.

The parties signed a stipulated settlement agreement on March 28, 2013 ("the original agreement").  Harris Decl., Ex. 1.  The Court analyzed the terms of this agreement in its order of July 12, 2013, in which it denied without prejudice Lounibos' motion for preliminary approval of the settlement on the grounds that Lounibos failed to provide sufficient information to satisfy the requirements of Rule 23, and that the agreement had obvious deficiencies, appeared to grant preferential treatment to segments of the class, and did not appear to fall within the range of possible approval.  See ECF No. 45.  Specifically, the Court identified problems with the information that Lounibos provided in support of certification of the settlement class, the scope of the release, the content of the notice, the proposed method for distributing funds to class members, and the disclosure of class members' potential range of recovery.  Id.

In response to the Court's objections, the parties amended some portions of the original agreement, namely those pertaining to the settlement amount, the scope of the release, the scope of the class definition, and the distribution of funds to class members.  Harris Decl., Ex. 2.  They then filed a new motion for preliminary approval of the original agreement and its amendments (collectively "the revised agreement").  ECF No. 56.

Under the revised agreement, Keypoint has agreed to pay a total settlement amount of $240,000.  Harris Decl., Ex. 2 ¶ 4.1.  The net distribution amount available to class members would be equal to the total settlement amount of $240,000 minus (1) up to $72,000 in attorney's fees, which is 30% of the total settlement fund; (2) costs and expenses of up to $15,000; (3) an

United States District Court
Northern District of California

incentive award for Lounibos of up to $7,500; (4) claim administration fees of no more than $12,000; and (5) a PAGA penalty of $5,000. Mot. at 16-17; Harris Decl. ¶¶ 36-37. Assuming all of these deductions, the amount available for distribution to class members would equal $129,750.

The net distribution amount would be divided among those class members who submitted a timely claim, as follows. Any class member who is a former employee will receive $250 in connection with her claims for waiting-time penalties under California Labor Code section 203. Harris Decl., Ex. 2 ¶ 4.3. There are a total of 43 former employees in the settlement class, which means that the maximum amount that can be paid to these class members in connection with waiting-time penalties is $10,750. Harris Decl. ¶ 37. After these payments are deducted from the net distribution amount, the remaining amount available for distribution to the class members will be at least $119,000. Id. This amount will be distributed to the class members based on a pro-rata share of their total individual regular, overtime, and double-time earnings during the class period in proportion to the total earnings of the class as a whole.[2] Harris Decl., Ex. 2 ¶ 4.6. In the event that not every class member files a timely claim, any funds remaining after all timely claims have been paid will be redistributed to the class members who submitted a timely claim based on the same pro-rata formula used in the first distribution. Id. Fifty percent of the payment that each class member receives will be treated as wages subject to payroll taxes and withholdings under state and federal law; the other fifty percent will be treated as prejudgment interest and statutory non-wage payments on which there will be no tax withholding. Harris Decl., Ex. 1 ¶ 4.4. Checks must be cashed within 180 days from the date of issue.[3] Harris Decl., Ex. 1 ¶ 7.5.

---

[2] For example, if the total regular, overtime, and double-time earnings of the settlement class during the class period is $1,000,000, and a class member who submits a timely claim earned a total of $50,000 during the class period, then that class member would receive 5% of the net distribution amount after waiting-time payments of $250 to former employees are deducted from the net distribution amount. Harris Decl., Ex. 2 ¶ 4.3.

[3] Any check that is not cashed within 180 days will be considered void and the amount of the check will be donated to the National Veterans Legal Services Program. Harris Decl., Ex. 1 ¶ 7.5. In their motion for final approval of the settlement, the parties shall establish that this organization has a nexus to the class such that the distribution of uncashed-check amounts to that organization would be appropriate under applicable Ninth Circuit authority. (For example, it may be that many of the class are former military personnel, in which case a declaration stating this fact under penalty of perjury would suffice.) Alternatively, the parties shall point to binding authority showing that establishing this nexus is not necessary.

1    Lounibos estimates that, on average, each class member will be entitled to receive a

2  minimum of $1,008.47 under the terms of the settlement if 100% of the class members submit

3  timely claims.  Id.  This figure would increase to $1,642 if only two-thirds of the class members

4  submit timely claims.  Id.

5    As part of the settlement, Lounibos and the putative class members would release their

6  claims against Keypoint in two ways:

7    (1)    Any individual who falls within the class definition and does not opt out would

8  fully release Keypoint from any claims or other liability arising out of the allegations in the

9  complaint under either state or local law (but not federal law), regardless of whether she submits a

10  timely claim form or receives payment under the settlement.  Harris Decl., Ex. 2 ¶ 5.1.

11    (2)    Any individual who falls within the class definition and who submits a timely claim

12  form would fully release Keypoint from any claims arising out of the FLSA or other federal laws

13  based on the allegations in the complaint.  Id.

## II.    LEGAL STANDARD

15    The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

16  actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  The settlement of

17  a certified class action must be fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2).  But,

18  where the "parties reach a settlement agreement prior to class certification, courts must peruse the

19  proposed compromise to ratify both the propriety of the certification and the fairness of the

20  settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  In these situations,

21  settlement approval "requires a higher standard of fairness and a more probing inquiry than may

22  normally be required under Rule 23(e)."  Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir.

23  2012) (citation and internal quotation marks omitted).

## III.    DISCUSSION

### A.    Class Certification

26    A district court may certify a class action under Federal Rule of Civil Procedure 23 if the

27  parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of

28  the three subdivisions of Rule 23(b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23.  Id. at 620.  Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  Id. (citations omitted).

As discussed below, Lounibos has provided sufficient information to show that commonality, typicality, and predominance under Rule 23 exist.  Accordingly, Lounibos' request for conditional certification of the proposed settlement class is GRANTED.

### 1.    Rule 23(a)

Rule 23(a) contains four threshold requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Id. at 613.

#### a.    Numerosity

The numerosity requirement is satisfied when a plaintiff shows that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

Here, Counsel for Lounibos has determined that the proposed class includes approximately 118 individuals.  Harris Decl. ¶ 27.  Because the joinder of 118 plaintiffs would be impracticable, the numerosity requirement is met.

#### b.    Commonality

The commonality requirement is satisfied when a plaintiff shows that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality exists when the plaintiff's claims "depend upon a common contention" of "a nature that it is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

The Court previously found that this requirement was not satisfied because the class definition, as previously drafted, included Keypoint employees who held the position of investigator "or similar position[s]."  ECF No. 45 at 5-6.  Because Lounibos did not explain the nature of those "similar positions," the Court was not able to determine whether there were any

United States District Court
Northern District of California

6

1    "dissimilarities within the proposed class" that had "the potential to impede the generation of

2    commons answers." Id.

3            Lounibos has revised the class definition to cover individuals who worked as investigators

4    only.  In light of the revision, the Court concludes that the commonality requirement is met, as

5    there are questions of law or fact that are common to all class members, such as whether

6    Keypoint's policies and practices resulted in a failure to provide to the class members the requisite

7    breaks, wages, and wage statements under applicable laws.

**c.      Typicality**

9            Typicality exists if "the claims or defenses of the representative parties are typical of the

10   claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other

11   members have the same or similar injury, whether the action is based on conduct which is not

12   unique to the named plaintiffs, and whether other class members have been injured by the same

13   course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation and

14   internal quotation marks omitted).

15           The Court previously concluded that Lounibos had failed to show that the class members

16   suffered injuries similar to the ones that Lounibos allegedly suffered, because Lounibos did not

17   make clear in his submissions the nature of the positions that the class members held.  ECF No. 45

18   at 6-7.

19           Lounibos' revision of the class definition to cover only investigators, as discussed above,

20   has eliminated this concern.  Each of the class members under the revised class definition held the

21   position of investigator, and thus, each of them was subject to the same policies and working

22   conditions that gave rise to Lounibos' injuries.  Accordingly, the typicality requirement is met.

**d.      Adequacy of Representation**

24           A plaintiff may bring claims on behalf of a class only if she "will fairly and adequately

25   protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions

26   determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of

27   interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the

28   action vigorously on behalf of the class?"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th

United States District Court
Northern District of California

7

Cir. 1998) (citation omitted).

Here, Lounibos states that he is an adequate representative because he and his counsel have devoted considerable time and effort to advancing the interests of the class, and have no known conflicts of interest with absent class members.  Harris Decl. ¶¶ 63-66, 69.  Because there is nothing on the record indicating that Lounibos or his counsel have any conflicts of interest with the putative class members or that their interests in this case are insufficient to ensure vigorous representation of the class, this requirement also is met.

### 2.     Rule 23(b)(3)

This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Court previously concluded that Lounibos had failed to establish predominance and superiority because he had not shown that the class members who held each of the positions covered by the proposed class definition were subject to the same conditions that led to the injuries that Lounibos suffered.   ECF No. 45 at 7.  In light of Lounibos' revision to the class definition, this is no longer an issue.  Because all class members worked as investigators and thus had the same duties and obligations, and were subject to the same policies and working conditions, the Court concludes that the common questions in this action, namely whether Keypoint's policies and practices with respect to the class members complied with applicable laws, predominate over the individual ones.   For this reason, the Court finds that a class action is the best method for litigating the class members' claims.

### B.     Fairness of the Settlement

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).  "It is the settlement taken as a whole, rather than the individual component parts, that must be

examined for overall fairness."  Hanlon, 150 F.3d at 1026 (citation omitted).  A court may not "delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety."  Id.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

The parties' revised agreement meets the Ninth Circuit's requirements for preliminary approval.  Accordingly, Lounibos' motion for preliminary approval of the revised agreement is GRANTED.

### 1. The Settlement Process

The stipulated settlement was reached after the parties participated in private mediation, which suggests that the settlement process was not collusive.  Moreover, Lounibos asserts that the parties conducted a "substantial investigation" of the claims at issue and engaged in "informal discovery" during the nine-month period between the filing of the complaint in February 2012 to November 2012, when the parties participated in a mediation session.  These facts support the conclusion that the parties were sufficiently informed about the strengths and weaknesses of Lounibos' claims when negotiating the settlement.

### 2. Obvious Deficiencies

#### a. Scope of the Releases

In its July 12, 2013, order, the Court objected to the original agreement's lack of a provision that would exclude class members whose class notice is returned as undeliverable by the post office.  ECF No. 45 at 9

The parties have cured this deficiency.  The revised agreement requires the settlement administrator to use "appropriate methods," including skip-trace, to obtain the current address of any class member whose notice is returned as undeliverable, and to re-mail the notice to the current address within five days.  Harris Decl., Ex. 2 ¶ 6.4.  If that class member's notice is

United States District Court
Northern District of California

returned as undeliverable a second time, then the claims of that class member will not be released in accordance with the revised agreement.  Id.

### b.    Release of FLSA Claims

The Court previously objected to the release in the original settlement agreement, because it did not specifically state that the FLSA claims of a class member who does not opt out would not be released.  ECF No. 45 at 9-10.

The parties have addressed this concern by amending the scope and language of the release.  The release now is consistent with the FLSA's opt-in requirement, providing that a class member's FLSA claims will be released only if that class member submits a valid claim.  Harris Decl., Ex. 2 ¶ 5.1.

### c.    Notice

In its prior order, the Court found the proposed notice to be deficient because it did not adequately inform the class members of their rights under the FLSA, or notify them that, unless they opt out, they will release their state-law claims even if they never receive a payment under the settlement.  ECF No. 45 at 10.

The revised notice does not suffer from these deficiencies.

### 3.    Preferential Treatment

The Court previously noted that the proposed scheme for distributing funds to each class member under the original agreement appeared to unfairly benefit some class members at the expense of others, because the scheme was based on the number of pay periods that each class member worked, and as a result, it did not take into account the hourly rate that each class member was paid or the number of hours that each class member worked within any given pay period. ECF No. 45 at 11.

The parties have addressed this problem by replacing this distribution scheme with one that is based on the total amount of compensation that each class member received during the class period.  Harris Decl., Ex. 2 ¶ 4.3.  This new distribution scheme does not appear to benefit some segments of the class more than others.

//

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.    Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080.

The Court previously found that Lounibos had failed to provide any information concerning the adequacy of the settlement, namely information concerning the potential range of recovery.  ECF No. 45 at 11.  In his renewed motion, Lounibos adequately explains the strengths and weaknesses of his claims, and he provides the maximum amounts that the class members could recover on each claim.  ECF No. 56 at 5-11.  This information is sufficient to show that the settlement falls within the range of possible approval.

The Court also previously objected to certain terms of the original settlement that permitted Keypoint to satisfy its employer payroll tax obligation out of the total settlement amount, and that permitted unclaimed funds to revert to Keypoint.  ECF No. 45 at 11-12.  These terms are not a part of the revised agreement.

## IV.    CONCLUSION

1.    Lounibos' motion for preliminary approval of the revised agreement is GRANTED.

2.    The Court certifies for settlement purposes only the following class: "All natural persons who were employed by Defendant Keypoint Government Solutions, Inc., in California as a non-exempt Investigator during the period of time beginning June 1, 2009, through December 31, 2012."

3.    The Court appoints David S. Harris of the North Bay Law Group and Steven Hammond  of Hammond Law Group, P.C., as class counsel; Donald Lounibos as representative for the settlement class; and Gilardi & Co., LLC as the claims administrator.

4.    The Court approves the proposed notice and claim form attached as Exhibits 3 and 4 to the Harris Declaration.  The notice and claim form shall be mailed to the class members within 28 days of the date this order is filed.  Within 7 days of the date the notice and claim form are mailed, class counsel shall file a declaration in ECF stating that this mailing has occurred.

5.      Class members shall have 60 days from the date on which claim forms are mailed to submit a completed claim form, request exclusion, file objections, or file a notice of intent to appear.  The proposed notice and claim form shall be edited accordingly.

6.      A final fairness hearing will be held on July 24, 2014 at 2:00 p.m. in Courtroom 9, 450 Golden Gate Avenue, 19th Floor, San Francisco, California, 94102.  Class members who would like to participate in this hearing must file a written notice indicating their intent to appear, either in their objections or separately, within 60 days of the date the claims administrator mails the notice and claim form.

7.      Class counsel shall file a motion for attorneys' fees, costs, and an enhancement award no later than the date on which the notice and claim form are mailed to the class members. Class counsel shall file a motion for final approval of the revised agreement at least 45 days before the final fairness hearing.

**IT IS SO ORDERED.**

Dated:  February 10, 2014

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

12