UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONALD LOUNIBOS,

    Plaintiff,

  v.

KEYPOINT GOVERNMENT SOLUTIONS INC,

    Defendant.

Case No. 12-cv-00636-JST

**ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND AN ENHANCEMENT AWARD**

Re: ECF Nos. 67, 73

Two motions are pending in this putative wage-and-hour class action and collective action hybrid. First, Plaintiff Lounibos moves for an order granting final approval to the parties' settlement agreement. Second, Lounibos moves for an award of attorneys' fees, litigation costs, and a service enhancement award. Defendant Keypoint does not oppose either motion. The court held a final fairness hearing on July 24, 2014. For the reasons set forth below, the motions are GRANTED.

**I.     BACKGROUND**

    **A.     Lounibos' Claims**

Defendant Keypoint Government Solutions provides investigative and risk-mitigation services to government organizations. Compl. ¶ 3, ECF No. 1. Plaintiff Donald Lounibos was employed by Keypoint as an investigator from September 2009 to October 2011. Id. ¶ 5. In the course of his employment, Lounibos conducted background investigations on potential government employees and prepared reports for Keypoint after the conclusion of his investigations. Id. Keypoint assigned work to Lounibos "via a secure computer" and gave him strict deadlines by which he had to complete each investigation and report. Id. ¶ 6. Though Lounibos frequently was unable to complete his assigned tasks within an eight-hour work day, the

1    computer system through which Lounibos had to report his work hours did not allow him to enter
2    time in excess of eight hours for any given day.  Id.

3    In the complaint, which he filed on February 9, 2012, Lounibos alleges that Keypoint
4    violated various state and federal labor laws by failing (1) to pay him minimum and overtime
5    wages; (2) to provide him rest breaks, meal breaks, pay statements, and copies of signed personnel
6    documents; and (3) to maintain accurate payroll records.

7    Lounibos seeks to represent a class composed of "all individuals who were employed in a
8    Covered Position during the Covered Time Frame."  Harris Decl., Ex. 1 ¶ 1.11.  Covered Positions
9    are defined as "all natural persons who were employed by Defendant in California as a non-
10   exempt Investigator."  Id., Ex. 2 ¶ 1.7.  The Covered Time Frame is defined as "the period of time
11   beginning June 1, 2009 through December 31, 2012."  Id. ¶ 1.6.

12   Lounibos asserts the following nine claims on behalf of himself and the putative class
13   members: (1) failure to pay minimum wages and overtime compensation in violation of California
14   Labor Code sections 510, 1194, 1198 and Industrial Welfare Commission ("IWC") Wage Order 4;
15   (2) continuing wages as a penalty under California Labor Code sections 201 to 203; (3) failure to
16   provide accurate itemized wage statements in violation of California Labor Code section 226;  (4)
17   failure to maintain accurate payroll records in violation of California Labor Code section 1174 and
18   IWC Wage Order 4; (5) failure to provide adequate rest periods in violation of California Labor
19   Code section 226.7 and IWC Wage Order 4; (6) failure to provide adequate meal periods in
20   violation of California Labor Code section 226.7 and IWC Wage Order 4; (7) failure to pay
21   minimum or overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §
22   216(b); (8) failure to provide signed documents in violation of California Labor Code section
23   226(f); and (9) violations of California's Business and Professions Code section 17200.

24   **B.    Revised Settlement Agreement**

25   The parties participated in a mediation conducted by The Honorable David A. Garcia of
26   JAMS on November 2, 2012.  Harris Decl. ¶ 20.  Before the mediation, the parties exchanged
27   "informal discovery," which included complete hourly employee payroll data for 25% of the
28   putative class; Keypoint's policies, handbooks, and training materials; and other relevant

documents. Id. ¶ 19. Lounibos' counsel interviewed numerous witnesses and took the deposition of Keypoint's Chief Personnel Officer and Keypoint's Field Manager, who was responsible for the implementation of Keypoint's policies and practices with respect to Lounibos and "more than one-half of the putative class." Id.

The parties signed a stipulated settlement agreement on March 28, 2013 ("the original agreement"). Harris Decl., Ex. 1. The Court analyzed the terms of this agreement in its order of July 12, 2013, in which it denied without prejudice Lounibos' motion for preliminary approval of the settlement on the grounds that Lounibos failed to provide sufficient information to satisfy the requirements of Rule 23, and that the agreement had obvious deficiencies, appeared to grant preferential treatment to segments of the class, and did not appear to fall within the range of possible approval. See ECF No. 45. Specifically, the Court identified problems with the information that Lounibos provided in support of certification of the settlement class, the scope of the release, the content of the notice, the proposed method for distributing funds to class members, and the disclosure of class members' potential range of recovery. Id.

In response to the Court's objections, the parties amended some portions of the original agreement, namely those pertaining to the settlement amount, the scope of the release, the scope of the class definition, and the distribution of funds to class members. Harris Decl., Ex. 2. They then filed a new motion for preliminary approval of the original agreement and its amendments (collectively "the revised agreement"). ECF No. 56.

Under the revised agreement, Keypoint has agreed to pay a total settlement amount of $240,000. Harris Decl., Ex. 2 ¶ 4.1. The net distribution amount available to class members would be equal to the total settlement amount of $240,000 minus (1) up to $72,000 in attorney's fees, which is 30% of the total settlement fund; (2) costs and expenses of up to $15,000; (3) an incentive award for Lounibos of up to $7,500; (4) claim administration fees of no more than $12,000; and (5) a PAGA penalty of $5,000. Mot. at 16-17; Harris Decl. ¶¶ 36-37. Assuming all of these deductions, the amount available for distribution to class members would equal $129,750.

The net distribution amount would be divided among those class members who submitted a timely claim, as follows. Any class member who is a former employee will receive $250 in

connection with her claims for waiting-time penalties under California Labor Code section 203. Harris Decl., Ex. 2 ¶ 4.3. There are a total of 43 former employees in the settlement class, which means that the maximum amount that can be paid to these class members in connection with waiting-time penalties is $10,750. Harris Decl. ¶ 37. After these payments are deducted from the net distribution amount, the remaining amount available for distribution to the class members will be at least $119,000. Id. This amount will be distributed to the class members based on a pro-rata share of their total individual regular, overtime, and double-time earnings during the class period in proportion to the total earnings of the class as a whole.[1] Harris Decl., Ex. 2 ¶ 4.6. In the event that not every class member files a timely claim, any funds remaining after all timely claims have been paid will be redistributed to the class members who submitted a timely claim based on the same pro-rata formula used in the first distribution. Id. Fifty percent of the payment that each class member receives will be treated as wages subject to payroll taxes and withholdings under state and federal law; the other fifty percent will be treated as prejudgment interest and statutory non-wage payments on which there will be no tax withholding. Harris Decl., Ex. 1 ¶ 4.4.

Checks must be cashed within 180 days from the date of issue. Harris Decl., Ex. 1 ¶ 7.5. Any check that is not cashed within 180 days will be considered void and the amount of the check will be donated to the National Veterans Legal Services Program ("NVLSP"). Harris Decl., Ex. 1 ¶ 7.5. The parties selected the NVLSP to be the cy pres recipient because many KeyPoint Investigators are United States veterans and the NVLSP provides legal services aimed at vindicating the legal rights of veterans. Harris Decl. ¶ 11.

As part of the settlement, Lounibos and the putative class members would release their claims against Keypoint in two ways:

(1) Any individual who falls within the class definition and does not opt out would fully release Keypoint from any claims or other liability arising out of the allegations in the

---

[1] For example, if the total regular, overtime, and double-time earnings of the settlement class during the class period is $1,000,000, and a class member who submits a timely claim earned a total of $50,000 during the class period, then that class member would receive 5% of the net distribution amount after waiting-time payments of $250 to former employees are deducted from the net distribution amount. Harris Decl., Ex. 2 ¶ 4.3.

1  complaint under either state or local law (but not federal law), regardless of whether she submits a

2  timely claim form or receives payment under the settlement.  Harris Decl., Ex. 2 ¶ 5.1.

3      (2)    Any individual who falls within the class definition and who submits a timely claim

4  form would fully release Keypoint from any claims arising out of the FLSA or other federal laws

5  based on the allegations in the complaint.  Id.

### C. Procedural History

The court granted preliminary approval to the revised settlement on February 10, 2014. ECF No. 66.  In the same order, the court approved Lounibos' proposed notice to the class.  Id.

On March 10, 2014, the class administrator mailed the notice to the class members.[2] Harris Decl. ¶ 14.  The class administrator has received 80 claim forms.  Wyatt Decl. ¶ 10.  None of the class members have requested to opt out of the settlement, have filed objections, or have requested to appear at the final fairness hearing.

Based on the 80 claim forms submitted, each class member who submitted a timely claim form is expected to recover approximately $1,712.67.  Harris Decl. ¶ 6.

## II. MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998).  In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  Id. at 1026. "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in

---

[2] Pursuant to a stipulation, the court ordered the class administrator to send a supplemental mailing to the class members on or before April 9, 2014, to alert the class members of an error in the original notice, which incorrectly stated that the deadline for filing objections was April 9, 2014, as opposed to May 9, 2014.  ECF No. 72.  The parties have filed a declaration establishing that this supplemental mailing was made.  Wyatt Decl. ¶ 9.

1  settlement; the extent of discovery completed and the stage of the proceedings; the experience and
2  views of counsel; the presence of a governmental participant; and the reaction of the class
3  members to the proposed settlement." Id.

4      A district court may certify a class action under Federal Rule of Civil Procedure 23 if the
5  parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of
6  the three subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).
7  When determining whether to certify a class for settlement purposes, a court must pay
8  "heightened" attention to the requirements of Rule 23. Id. at 620. Indeed, "[s]uch attention is of
9  vital importance, for a court asked to certify a settlement class will lack the opportunity, present
10 when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id.
11 (citations omitted).

12     **B.**    **Analysis**

13     In its order of February 10, 2014, the court concluded that the settlement class satisfies the
14 requirements of Rules 23(a) and 23(b)(3). Because none of the factors upon which this
15 determination was based has changed since the issuance of that order, the court hereby reaffirms
16 its conclusion that certification of the class for settlement purposes is appropriate.

17     Additionally, as will be discussed below, the court concludes that the proposed settlement
18 is fair, adequate, and reasonable. As such, the court GRANTS Lounibos' motion for final
19 approval of the proposed settlement.

20     **1.**    **Adequacy of Notice**

21     "The class must be notified of a proposed settlement in a manner that does not
22 systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of
23 City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

24     Here, the court previously approved the parties' proposed method for providing notice to
25 the class. ECF No. 87. The parties have shown that the class administrator has carried out the
26 notice plan approved by the court. Wyatt Decl. ¶¶ 4-9. Only two notices out of 118 were returned
27 to the class administrator as undeliverable. Id. ¶ 6. After searching for updated addresses, the
28 claims administrator re-mailed the notice packets to the updated addresses. Both of these re-

1  mailed notice packets appear to have been delivered as they have not been returned to the claims
2  administrator. Id.
3       In light of the foregoing, the court finds that the parties have sufficiently provided the best
4  practicable notice to the settlement class members. See Lundell v. Dell, Inc., Case No. 05-3970
5  JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and
6  first class mail constituted the "best practicable notice" and satisfied due process requirements).

### 2. Fairness, Adequacy, and Reasonableness of Settlement

#### a. Strength of Plaintiff's Case

9       Approval of a class settlement is appropriate when "there are significant barriers plaintiffs
10  must overcome in making their case." Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848,
11  851 (N.D. Cal. 2010).
12       Here, Lounibos acknowledges that, if the settlement is not approved, he will encounter
13  significant obstacles in establishing its claims in light of the uncertainties surrounding class
14  certification. The court finds that these acknowledged weaknesses weigh in favor of approving
15  the settlement. See Moore v. Verizon Communications Inc., C 09-1823 SBA, 2013 WL 4610764,
16  at *5 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored settlement
17  because plaintiff admitted that it would face hurdles in establishing class certification, liability,
18  and damages).

#### b. The Risk of Continued Litigation

20       Difficulties and risks in litigating weigh in favor of approving a class settlement. See
21  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).
22       Here, this factor supports granting final approval to the parties' settlement because, absent
23  the settlement, Lounibos would have faced the following risks: (1) a denial of his motion for class
24  certification or the certification of a narrower class; (2) the possibility that Keypoint may prevail
25  on some of its affirmative defenses; (3) the possibility that no monetary remedy exists for an
26  alleged failure to maintain accurate payroll records; and (4) the possibility that good faith disputes
27  as to the viability of the underlying wage claims in this case could preclude any penalty awards
28  under California Labor Code sections 203 and 226(e). Harris Decl. ¶ 9.

### c. Amount of Settlement

The court concludes that the settlement will fairly, adequately, and reasonably compensate the class members based on the nature of each class member's claims. Specifically, former employees will receive a flat payment of $250 in connection their claims under California Labor Code section 203. After these payments are made, the remaining funds will be distributed based on each class member's pro-rata share of regular, overtime, and double-time earnings during the class period. Additionally, Lounibos has shown that, in light of the 80 claim forms filed, each class member who submitted a claim form is expected to recover approximately $1,712.67, which is a substantial amount. Harris Decl. ¶ 6.

### d. Cy pres

A cy pres award must be guided by "(1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (citation and internal quotation marks omitted). "To ensure that the settlement retains some connection to the plaintiff class and the underlying claims . . . a cy pres award must qualify as the next best distribution to giving the funds directly to class members." Id. (citation and internal quotation marks omitted).

Here, Lounibos has shown that the parties' selection of NVLSP as the cy pres recipient is appropriate in light of the nexus that exists between the class members and that organization, as many KeyPoint Investigators are veterans and the NVLSP provides legal services aimed at vindicating the legal rights of veterans.

### e. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision Technologies, Inc., 559 F. Supp. 2d at 1043 (citation omitted).

Here, counsel for Lounibos believe that the settlement represents "an excellent bargain for the class, given the inherent risks, hazards, and expenses of carrying the case through trial." ECF No. 73 at 8. This weighs in favor of finally approving the settlement. See, e.g., In re Omnivision Technologies, Inc., 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement to be presumptively reasonable because they demonstrated knowledge about the case

8

and securities litigation in general).

### f. Reaction of the Class

The positive reaction of the class members to a settlement weighs in favor of settlement approval. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Id. (citation omitted).

In this case, of 118 class members, 80 filed claims and none of them have opted out of the settlement or filed objections. Given the class members' overwhelmingly positive reaction, the court finds that the settlement is favorable to the class members. See, e.g., McKee Foods Corp., 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

## III. ATTORNEY'S FEES

### A. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id.

"Because the benefit to the class is easily quantified in common-fund settlements," courts can "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citation omitted). In

considering whether to adjust the presumptive 25% award upward, the Ninth Circuit has approved of district courts taking into account "[e]xceptional results," the "risk" of non-recovery assumed by counsel, any "benefits beyond the case settlement fund" that counsel achieved for the class, counsel's "reasonable expectations, . . . based on the circumstances of the case and the range of fee awards out of common funds of comparable size," and any unusual burdens borne by counsel. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

"Even though a district court has discretion to choose how it calculates fees . . . it 'abuses that 'discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward.'" In re Bluetooth, 654 F.3d at 944 (citation omitted). "Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation," the Ninth Circuit has "also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." Id.

**B.    Analysis**

Here, the settlement fund totals $240,000. Lounibos seeks $72,000 in attorney's fees, which is 30% of the settlement fund. ECF No. 67. The lodestar totals $158,155. Harris Decl. ¶ 7 & Ex. 1, 2. Thus, the fees sought constitute a .46 multiplier of the lodestar.

Counsel for Lounibos contend that the fees sought are appropriate even though they exceed the 25% benchmark because the class members will receive significant payments and other relief from the settlement, and because the amount sought is less than the lodestar of $158,155.[3]

The court concludes that an upward departure from the 25% benchmark is warranted in light of the exceptional results that counsel for Lounibos achieved, including Keypoint's modification to its record-keeping procedures, which Lounibos would not have been able to obtain through an injunction due to his status as a former (and not current) employee of Keypoint. ECF No. 67 at 9-10. The court also finds the requested fees to be reasonable because they represent a .46 multiplier of the lodestar. See In re Omnivision Technologies, Inc., 559 F. Supp. 2d at 1048 (noting that courts have approved multipliers ranging between 1 and 4); see also Vizcaino v.

---

[3] The injunctive relief refers to Keypoint's modification of the manner in which it records employee time. ECF No. 67 at 9-10.

10

1 Microsoft Corp., 290 F.3d at 1051 n.6 (noting that the majority of class action settlements
2 approved had fees multipliers that ranged between 1.5 and 3). Accordingly, Lounibos' motion for
3 $72,000 in attorney's fees is GRANTED.

### IV.    EXPENSES

#### A.    Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).

#### B.    Analysis

A review of the records submitted by class counsel shows that their expenses total $3,985.78. Harris Decl., Ex. 1 & 2. These expenses were incurred in connection with computer research, filing fees, telephone charges, and costs for copying and printing. Because these expenses are of the type normally charged to a paying client, Lounibos' motion for $3,985.78 in costs is GRANTED.

### V.    INCENTIVE AWARD

#### A.    Legal Standard

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). "The district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" Staton, 327 F.3d at 977 (citation omitted). "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v.

Experian Information Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

**B.     Analysis**

The court concludes that an incentive award to Lounibos of $7,500 is reasonable. Lounibos spent a substantial amount of time participating in this litigation, including participating in the taking of his deposition, and his efforts resulted in a significant recovery for the class members. See Lounibos Decl. ¶¶ 3-6. Accordingly, Lounibos' motion for an incentive award of $7,500 is GRANTED.

**VI.    CONCLUSION**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The court certifies the following class for settlement purposes only: "all natural persons who were employed by Defendant Keypoint Government Solutions, Inc., in California as a non-exempt Investigator during the period beginning June 1, 2009, through December 31, 2012."

2. The court grants final approval to the parties' proposed settlement, which is fair, adequate, and reasonable.

3. The court confirms Lounibos as the representative for the settlement class, and David Harris, of the North Bay Law Group, and Steven Hammond, of the Hammond Law Group, P.C., as counsel for the settlement class.

4. The court confirms the National Veterans Legal Services Program as the cy pres recipient for uncashed settlement checks.

5. The court approves an incentive award of $7,500 to Lounibos.

6. The court approves an award to class counsel of $72,000 in attorney's fees and $3,985.78 in costs.

7. The court approves the payment of $12,000 to the claims administrator.

**IT IS SO ORDERED.**

Dated: July 29, 2014

_____
JON S. TIGAR
United States District Judge